# Richmond

## R. L. HENDERSON v. C. W. R. HENDERSON.

March 5, 1945.

Record No. 2876.

Present, All the Justices.

The opinion states the case.

*S. S. Lambeth, Jr.*, for the appellant.

*Radford & Foster*, for the appellee.

CAMPBELL, C. J., delivered the opinion of the court.

This case, in its last analysis, presents but one issue, viz: the correctness of the decree entered by the circuit court, admitting to probate a letter written by Ellen M. Gayle, as a valid codicil to her last will and testament, dated August 10, 1934.

By agreement of counsel, a trial by jury was waived and

all matters of law and fact were submitted to the court for its decision.

Ellen M. Gayle, a resident of Bedford county, Virginia, died November 16, 1938. Her will, dated August 10, 1934, was duly admitted to probate on the 6th day of December, 1938. By her will, testatrix directed that her personal property be divided into two equal shares and then designated the beneficiaries thereof.

The pertinent provisions of the will are as follows:

"The balance or residue of said one half of my personal estate shall be divided equally among my brothers, Raymond L. Henderson, Ernest C. Henderson and Charles William R. Henderson, or to their respective issue *per stirpes* should any of them have predeceased me, and in the event that either or any of them shall have predeceased me leaving no issue, such share or shares shall go to the survivors or survivor, or the issue *per stirpes* of any who predecease me leaving issue.

&ast; &ast; &ast; &ast; &ast; &ast;

"SECOND: All of the rest of my property, and particularly my real estate and interest in real estate, whether held by legal or equitable title, and wheresoever situated, and particularly including my share or interest in the lands or the estate left by my father (which particularly is excluded from my personal estate hereinabove provided for), shall be administered as a trust fund until the death of the survivor of my brother, Daniel B. Henderson, and his wife, Lucy M. Henderson, as follows:

"(1) ½ of the income from said fund shall be paid to my brother, Daniel B. Henderson, so long as he shall live, and at his death, or he having predeceased me, to his wife, Lucy M. Henderson;

"(2) The other ½ of said income shall be paid equally to my brothers, Raymond L. Henderson, Ernest C. Henderson and Charles William R. Henderson, or to their respective issue *per stirpes* should either or any of them have predeceased me or died before the death of the survivor of my brother, Daniel B. Henderson, and his wife, Lucy M. Henderson, and in the event of the failure of issue at such

time then to the survivors or survivor of my last mentioned three brothers, or their respective issue *per stirpes,* if dead.

"Upon the death of the survivor of Daniel B. Henderson and Lucy M. Henderson, his wife, this fund, however represented, whether by money, stocks, bonds, real estate, or interest in real estate, shall be divided into two equal parts, one part thereof to go to and be divided equally among my brothers, Raymond L. Henderson, Ernest C. Henderson and Charles William R. Henderson, or their respective issue, *per stirpes,* if dead, and in the event that either or any of them at that time shall have died leaving no issue, such share or shares shall go to the survivors or survivor of them, or the issue *per stirpes* of any of them who have died leaving issue: * * * ."

On July 1, 1940, appellee, C. W. R. Henderson, presented to the circuit court a letter addressed to "Dear Roy," and signed "Sister Ella," and moved that it be admitted to probate as a codicil to the will of Ellen M. Gayle, theretofore probated. That letter is as follows:

"My dear Roy:

"I will now have to make a change in my will. The bequest to Cora I now want to go to you and just keep this for business like transfer. I will have Abbot take up the matter with me if I am spared to get to Virginia. Another matter is in regard to dear Ernest. I also want you to have what I planned for him; if he should be living you are to have it just the same, as he is provided for as long as he lives by the arrangement made by Mr. McClay. I want you and yours to have what I planned to give Cora and Ernest. Just hold this little piece of paper in case there should be trouble. I have planned for Brother also for the Ripple boys and the McClay children. Mr. McClay asked me to leave them nothing but I cannot do that after all their kindness to me. Mr. McClay said he had an abundance for them. This is a private note for you. I do not want it known in Hancock. I of course will come to Ernest's aid if Raymond should not have sufficient to make him com-

fortable. Raymond told me he had sufficient. I am so anxious for you, Annie and your family to be cared for in your old age.

"Sister Ella."

Upon the conclusion of the case, the court admitted the paper writing to probate as a valid codicil, the effect of which is to vest in appellee "those portions, both principal and income, of the estate which said will provided for Ernest C. Henderson, now deceased."

The entry of said decree is assigned as error.

Since our decision in *McBride* v. *McBride*, 26 Gratt. (67 Va.) 476, 480, the rule in this Commonwealth has been that any paper writing offered for probate as a will or codicil must bear the stamp of testamentary intent.

In the *McBride Case, supra*, Judge Staples, speaking for the court, announced this doctrine:

"All the authorities hold, indeed it is very clear, it is not necessary to the validity of a will that it should have a testamentary form, or that the decedent should know that he had performed a testamentary act, or that he should intend to perform such act. A deed poll, or an indenture, a bond, a marriage settlement, a letter, a promissory note, and the like, have been valid as a will. If the paper contains a disposition of the property, to take effect after the death of the testator, though it was not intended to be a will, but an instrument of a different shape, yet if it cannot operate in the character in which it was intended, it may operate as a testamentary act. 1 Lomax on Ex'rs, pages 33, 34.

"It is not necessary that the paper should be the identical one intended by the testator for his last will and testament. If the instrument has once received the sanction of the testator as the final disposition of his property, it will so remain until revoked or cancelled in some one of the modes required by the statute. He may have always intended to make another will, but until that intention is consummated by the execution of a posterior instrument, the

first will stand as the last will and testament, however little it may reflect the wishes of the testator."

In 68 C. J. 645, the doctrine relating to codicils is thus stated:

■ "The courts entertain liberal views as to the form and contents of codicils, and hold that an instrument, executed with a testamentary purpose and the requisite formalities, may operate as a codicil, although it is partly or wholly in the form of a letter, power of attorney, or deed, or although its only provision is one naming an executor."

In Harrison on Wills and Administration, section 193 (6), page 385, we read:

"But in the case of a codicil to a will, the papers are executed at different times and the very object of the codicil very often is to make an alteration in the dispositions of the will. It is more or less to be expected, then, that there shall be some conflict between a codicil and a will, and, to the extent that there is a conflict, the provisions in the codicil prevail."

See also 1 Schouler on Wills, sec. 487.

Applying these principles to the case at bar, we look to the letter to determine the intent of the testatrix.

■ It is apparent from the sentence, "I will now have to make a change in my will," that the testatrix recognized the existence of the will formerly executed and by the use of the word "now" she clearly indicated that she had a present intent to change her will. Also, that she clearly intended to change the former disposition of her property is shown by the language: "The bequest to Cora I now want to go to you and just keep this for business like transfer." The language also clearly indicates that the letter was not merely meant as a social epistle, but had reference to a matter of "business like transfer."

This view is further fortified by the injunction to keep the letter intact. Then, too, the reference to "dear Ernest" is followed by the language which indicates testatrix intended to devise to appellee the property theretofore devised

to Ernest; and, again, the injunction, "Just hold this little piece of paper in case there should be trouble."

The last sentence in the letter, "I am so anxious for you, Annie and your family to be cared for in your old age," is of the clearest testamentary character. It plainly shows, as does the testimony of Mrs. Rita S. Myers, that the testatrix had a particular and peculiar affection for her brother Roy.

While the following statement in the *McBride Case*, *supra*, is true, "But when an attempt is made to establish a mere letter as a testamentary act, a request of the writer to destroy the letter leads irresistibly to the conclusion, his purpose was that that paper at least should not be his will," it follows, by the same token, that when the writer of the letter twice emphasizes the importance of preserving the letter in order to avoid trouble, she intends the letter as a codicil to her will then in existence.

Upon the whole, we are of opinion that the decree should be affirmed.

*Affirmed.*