15851

MEIER v. MEIER *ET AL.*

(38 S. E. (2d), 762)

*Messrs. Legge & Gibbs,* of Charleston, for Appellants,

*Mr. John I. Cosgrove,* of Charelston, for Respondent,

June 15, 1946.

MR. ASSOCIATE JUSTICE TAYLOR delivered the unanimous Opinion of the Court.

This case comes to this Court by way of appeal from the Court of Common Pleas for Charleston County upon the following agreed statement of facts:

August Meier, a brother of Respondent, and a naturalized citizen of the United States, died in the City of Charleston, on October 26th, 1938, leaving a document purporting to be his Last Will and Testament, which was admitted to probate in the Probate Court for Charleston County.

Respondent, claiming to be the sole beneficiary under said Will, entered into a contract with the Appellant Rodenberg, for a sale of a portion of the property devised under the purported will. Rodenburg refused to accept a conveyance thereof, expressing doubts as to Respondent's power to give a valid deed of conveyance to said premises.

This action was commenced in the Court of Common Pleas for Charleston County on the 2nd day of December, 1944, to have the court construe the Will of August Meier, deceased, and to require Rodenberg specifically to perform

his contract. The heirs-at-law of August Meier, deceased, had he died intestate, were two brothers, residents of the German Reich, and Respondent. The brothers, resident in Germany, were named as defendants, together with the fictitious defendants, Doe and Roe, to represent their respective heirs or successors in interest should either or both be dead. Upon proper affidavit these nonresidents and the fictitiously named defendants were ordered served by publication. In addition, the Order for Service by Publication required that a copy of the Summons and Complaint be served on the Alien Property Custodian of the United States, pursuant to the Acts of Congress and Orders thereunder dealing with service of process on enemy nationals. Publication of the Summons together with a Notice of *Lis Pendens* was made for three weeks, in a Charleston newspaper. The Post Office Department refused to accept for transmission through the mails copies of said Summons, the United States being at war with Germany.

In his Answer, Rodenberg alleged that the Will was invalid and ineffective as a testamentary instrument to vest in Respondent the interest of decedent in the real estate involved; that the Court had not obtained jurisdiction of the non-resident defendants, they being citizens and residents of the German Reich with which the United States was at war, so that a valid decree affecting their interests, if any, cannot be made; and that, even if jurisdiction of these defendants were obtained through valid service or process, they, their heirs or successors will have the right (under Section 436, Civil Code) within one year of notice of such decree, and seven years within its rendition, to appear and defend in this action and probably upset such decree by reason of which the title to this real estate is rendered uncertain and not good and marketable.

By a general Order of Reference, the cause was referred to William McG. Morrison, Esq., Master, to take the testimony and report the same to the Court, together with his

recommendations on all questions of law and fact, with leave to report any Special Matter.

The absent defendants were adjudged in default.

Following references at which testimony on behalf of Respondent was presented, the Master filed his Report, dated November 21, 1945, in which he found that the document purporting to be the Last Will and Testament of August Meier, was a valid will, and that by its terms and provisions the testator devised and bequeathed to his brother, Henry, all of his property, real and personal. The Master further found that the non-resident defendants had been duly and legally served. He, therefore, recommended that the Court, by proper order, decree that Henry Meier is the sole beneficiary under the said Will of August Meier, and that the Court further order Rodenberg to specifically perform his contract by accepting the deed of Henry Meier as conveying a fee-simple title to the premises involved in this suit.

To this Report, Rodenberg duly filed Exceptions, which came on to be heard before Honorable William H. Grimball, Judge, Ninth Judicial Circuit, at Chambers. By decree, dated 25th day of January, 1946, he overruled all Exceptions and affirmed the Report of the Master, hence this Appeal.

The questions raised by the Exceptions are:

I. Is the alleged Will of August Meier so vague, uncertain, confusing and ambiguous as to be wholly invalid and ineffectual as a testamentary instrument?

II. Were the absent defendants in the cause duly and legally served with process?

III. Has the Respondent, Henry Meier, such good and marketable title to the property, the subject of the cause, that the Court will decree specific performance of Appellant's contract to purchase the same, in view of Section 436 (3) of the South Carolina Code of 1942, which permits absent defendants to appear and defend in an action after final decree?

The Will in question is as follows:

"To all it May Concern.

"That I August Meier in sound mind and Memory, make this my last Will and Testimony and Revoke all others previous, made by me.

"After my just debts and funeral expenses are paid, Bequeath of follows: All part, and interest on my part of the A Groceries Store, with the contents therein, of Groceries and fixture, also the Building of same Situated cor. Smith and Calhoun Sts., also money deposited in Bank or Banks in the firm of H. and A. Meier, or same firm. I am also interested of other Real Estate bought in the firms name or if any investment is made after this Will and Testament is made to my bro. Henry Meier, the head of the firm of H. and A. Meier, for his own bennificial use as he seems to probate:

"I do further state I have appointed H. Meier the benneficial as Executor to fulfill this my Last Will and Testament, without any hindrance from anybody whatsoever, and set my hand and seal to this my last Will and Testament, in the present of three witnesses as my own free act and deed.

"August Meier".

"Witnessed by.

Edward C. Rogge

J. Ehlers

S. S. Chapman

"Subscribed before me this 20th day Twentieth day of August, A. D. 1917.

"(SEAL) J. A. Minges, Notary Public for S. Ca.

"Personally appeared before me Edward C. Rogge who saw the Testator sign this within Will and that he with J. Ehler and Edward C. Rogge saw the execution thereof.

J. A. Minges, Notary Public for S. Ca."

If after careful examination and long study the Court cannot ascertain a testator's intention it will declare the instrument invalid. *Davenport v. Collins,* 161 S. C., 387, 159 S. E., 787; 68 Corpus Juris, p. 636, and Appellant contends that the purported will in this case falls within the above category. However, it is elementary that the cardinal rule

of construction is to ascertain and effectuate the intention of the testator unless the same contravenes some well-settled rule of law or public policy.

*Peoples Nat. Bank of Greenville v. Harrison,* 198 S. C., 457, 18 S. E. (2d), 1.

The intention of the testator need not be declared in express terms in the Will, but it is sufficient if the intention can be clearly inferred from particular provisions of the Will, and from its general scope and import. The Courts will seize upon the slightest indications of that intention which can be found in the Will to determine the real objects and subjects of the testator's bounty. The inference as to the intent need not be irresistible or such as to exclude all doubts possible to be raised, but must, nevertheless be such as to leave no hesitation in the mind of the Court, and must not rest on mere conjecture.

*Kennedy v. Kennedy,* 190 S. C., 53, 2 S. E. (2d), 33, 35. *Jeffords v. Thormal,* 204 S. C., 257, 29 S. E. (2d), 116; 28 R. C. L., 218.

The law strongly favors the sustaining of a Will as opposed to its invalidation and will indulge in every presumption against intestacy.

*Frazier v. Frazier's Excrs.,* 11 S. C. Eq., 304. *Kirkland v. Mosley,* 109 S. C., 477, 96 S. E., 608. *McDonald v. Fagan,* 118 S. C., 510, 111 S. E., 793.

In the first portion of this instrument, testator provides for the payment of his debts and funeral expenses, and continuing refers to his interest in the grocery business and the property where it is situated, also money deposited in the bank of the firm of H. and A. Meier. The testator makes reference to other real estate owned at that time or any investment made afterwards, all to his brother Henry, referring to him as the head of the firm of H. and A. Meier "for his own benneficial use as he seems to probate". In Paragraph 1 we find the words "My last will and testimony" while in Paragraph 2 we find "This will and testament" and in Paragraph 3 the words "My last will and testament" are used on two occasions.

The testimony taken before the Master shows that the deceased and Plaintiff were brothers and came to this country while quite young, the elder being the Plaintiff who at that time was 16 years of age; that they entered business together in 1909 and continued so until the death of the testator in 1938. The testator never married and he and Plaintiff lived together throughout the entire time. Their relations with each other were very close, as the Plaintiff testified "almost like man and wife". All of the property acquired by the brothers was held jointly and all bank accounts carried in the name of H. and A. Meier and the property represented in the foregoing Will is the result of years of mutual effort and sacrifice. The only close relatives were two brothers living in Germany whom they had not seen for years.

Considering all the circumstances, there can be no doubt that the intention of the testator was that this should be his Will and that he intended to leave all of his property to the Plaintiff in fee simple.

Appellant readily acknowledges that both the State and Federal requirements as to the manner of service have been carefully fulfilled. The non-resident and fictitiously named defendants were served by publication and a copy of the Summons and Complaint were served on the Alien Property Custodian of the United States. The Order for publication in the usual form provides for service by publication on the absent defendants by publication of the Summons and by mailing, and also contained the following provision:

"Further Ordered, that a copy of said Summons and Complaint be securely enclosed in an envelope and postage thereon duly paid and forwarded by Registered Mail to Honorable Leo T. Crowley, Alien Property Custodian, Washington, D. C., as required by the Statutes of the United States and Executive Orders issued pursuant thereto relating to the service of process in court actions within the United States involving persons in designated enemy countries."

. A copy of the Summons was duly published in *The News and Courier* once a week for three weeks, as required by statute. Copies of the Summons and Complaint were duly enclosed in sealed envelopes with postage prepaid, properly addressed to the absent defendants at their last-known address, and delivered at the Charleston Post Office for transmission through the mails, but the Post Office refused to accept them, the United States being at war with Germany.

A copy of the Summons and Complaint was sent by Registered Mail to Honorable Leo T. Crowley, Alien Property Custodian, Washington, D. C., and was duly received by him, who then filed a written statement that he had determined not to appear for the enemy nationals.

Appellant contends, however, that the effect of the attempted service is legally *nil*. Pursuant to its constitutional powers, Congress enacted the War Powers Act (U. S. C. A., 50). By its terms, the appointment of an Alien Property Custodian was provided to take over the property or any interest in property of any enemy and in that respect the Alien Property Custodian was vested with the powers of a common-law trustee by executive order under the War Powers Act and was authorized to issue appropriate regulations governing the service of process or notice upon any person within any designated enemy country or any enemy-occupied territory in connection with any court or administrative action, or proceeding within the United States. Pursuant to such authority, the Alien Property Custodian issued among others, the following: Orders Nos. 5, 6 and 20, which were duly published in the Federal Register and of which this court will take judicial notice. General Order No. 5 requires a report from designated persons of any property or interest in which there is reasonable cause to believe a designated enemy national has interest.

General Order No. 6 is as follows:

"Service of Process Upon Any Person Within Any Designated Enemy Country or Any Enemy-Occupied Territory.

"Under the authority of the Trading with the Enemy Act, as amended and Executive Order No. 9095, as amended, and pursuant to law, the undersigned hereby issues the following regulation:

"503.6 General Order No. 6 (a) In any court or administrative action or proceeding within the United States in which service of process or notice is to be made upon any person in any designated enemy country or enemy-occupied territory, the receipt by the Alien Property Custodian of a copy of such process or notice sent by registered mail to the Alien Property Custodian at Washington, D. C., shall be service of such process or notice upon any such person, if and not otherwise, the Alien Property Custodian within sixty days from the receipt thereof shall file with the court or administrative body issuing such process or notice, a written acceptance thereof.

"(b) Such process or notice shall otherwise conform to the rules, orders or practice of the court or administrative body issuing such process or notice.

"(c) This order shall be construed to limit the authority of the Alien Property Custodian to take any measures in connection with representing any such person in any action or proceeding as in his judgment and discretion is or may be in the interest of the United States.

"(d) For the purposes of this order the terms:

"(1) 'Person' shall mean any individual, partnership, association or corporation;

"(2) 'Designated enemy country' shall mean any foreign country against which the United States has declared the existence of a state of war (Germany, Italy, Japan, Bulgaria, Hungary and Rumania) and any other country with which the United States is at war in the future;

"(3) 'Enemy-occupied territory' shall mean any place with which, by reason of the existence of a state of war, the United States does not maintain postal communication.

"Executed at Washington, D. C., August 2, 1942.

Leo T. Crowley,<br>
Alien Property Custodian."

General Order No. 20 provides as follows:

"Payment, Transfer or Distribution of Property in the Process of Administration by Any Person Acting Under Judicial Supervision, or in Court or Administrative Actions or Proceedings.

"Under the authority of the Trading with the Enemy Act, as amended, and Executive Order No. 9095, as amended, and pursuant to law, the Alien Property Custodian hereby issues the following regulation:

"503.20. General Order No. 20. (a) No designated person shall pay, transfer or distribute, or cause to be paid, transferred or distributed, any property of any nature whatsoever to or for the benefit of any designated enemy country or designated national, unless:

"(1) The Alien Property Custodian has issued to the designated person a written consent to the payment, transfer or distribution, or

"(2) The Alien Property Custodian has:

"(i) Filed a written statement in the court or administrative action or proceeding in connection with which the payment, transfer or distribution is proposed, that he has determined not to represent the designated national, or

"(ii) Represented the designated national in such action or proceeding by the appearance therein of a representative on behalf of the designated national, and such representative has been served by the designated person with written notice of the proposed payment, transfer or distribution, and ninety days expired without the exercise of any other power or authority by the Alien Property Custodian with respect to such property.

"(b) Any payment, transfer, or distribution pursuant to paragraph (a) of this regulation may be made only if licensed or otherwise authorized by the Secretary of the Treasury pursuant to the provisions of Executive Order No. 8389, as amended.

"(c) For the purpose of this regulation the terms:

"(1) 'Designated person' shall mean a person or officer acting under judicial supervision, or in any court of administrative action or proceeding, or in partition, libel, condemnation or other similar proceedings including, but not by way of limitation, (i) executor, (ii) administrator, (iii) guardian, (iv) committee, (v) curator, (vi) trustee under will, deed or settlement, (vii) receiver, (viii) trustee in bankruptcy, (ix) assignee for the benefit of creditors, (x) United States marshal, (xi) sheriff, (xii) commissioner, (xiii) person acting under trust agreement, and (xiv) all other persons or officers acting in a similar capacity.

"(2) 'Designated enemy country' shall mean any foreign country against which the United States has declared the existence of a state of war (Germany, Italy, Japan, Bulgaria, Hungary and Rumania) and any other country with which the United States is at war in the future.

"(3) 'Designated national' shall mean any person in any place under the control of a designated enemy country.

"(d) This regulation shall be effective on February 9, 1943.

"Executed at Washington, D. C., on February 9, 1943.

Leo T. Crowley,<br>Alien Property Custodian."

(SEAL)

Our Courts are divided on this question as will be shown in 42 Am. Jur., 69, and note in 137 A. L. R., 1361 *et seq.*

Section 436 of the S. C. Code for 1942 provides for service by publication upon a non-resident defendant "where he is not a resident of this State, but has property therein, and the court has jurisdiction of the subject of the action", and also "where the subject of the action is real or personal property in this State, and the defendant has or claims a lien or interest, actual or contingent, therein, or the relief demanded consists wholly or partly in excluding the defendant from any interest or lien therein". There is no doubt that either or both of these provisions fit the present case, since the court has jurisdiction of the subject of the action, *i. e.,* property within this State which is sought to be dis-

posed of in this proceeding. The power of the court to render judgment adjudicating the rights of a non-resident in property within the territorial jurisdiction of this State upon such non-resident by publication is ably discussed and upheld in *Bush v. Aldrich*, 110 S. C., 491, 96 S. E., 922. The defendant Rodenberg concedes the validity of service by publication in what he calls "ordinary" cases of non-residence, for example, in a case where the non-resident is a citizen of another state, but contends that such service is not valid as against the absent defendants in this case because of the legal and practical impossibility of their having an opportunity of seeing the publication of the summons or receiving it by mail. While, as we have indicated above, some states follow the defendant's view, others do not, and uphold the validity of service by publication in cases similar to this.

Congress in the exercise of its plenary powers in time of war, obviously could and did provide the method of service of process respecting such alien enemy interest so vested in the Alien Property Custodian. *Farmer Loan & Trust Co. v. Hicks*, 9 F. (2d), 848. And *Cummings v. Deutsche Bank*, 300 U. S., 114, 81 L. Ed., 545.

Examination of the record shows that provisions of Section 436, S. C. Code for 1942, and the terms of the Order for publication were minutely followed. Publication had and the Alien Property Custodian desingated as a trustee of the interest, if any, of the Defendants having been served personally and he having complied with the requirements of the order applicable thereto, this court is constrained to hold that the absent Defendants were duly and legally served.

Appellant contends that the Respondent, Henry Meier, does not have such good and marketable title to the property in question that the court will decree specific performance of Appellant's contract to purchase same in view of Section 436 (3) of the South Carolina Code for 1942, which permits absent defendants to appear within one year after service of such decree and within seven years after its rendition to contest and possibly upset the decree and that such makes the title uncertain.

This statute uses the word *judgment,* not judicial sale, and in *Hunter v. Ruff,* 47 S. C., 525, 25 S. E., 65, this court said:

"But, in addition to this, it seems to us that the legislature, recognizing the hardship and injustice which an innocent purchaser who has bought property under a judgment regular on its face would suffer if the owner of such property should be allowed to come in afterwards, and, by showing that there was some hidden vice in the judgment, have the same, and all proceedings thereunder, set aside, has made express provision for such purchaser from such hardship and injustice. In the third paragraph of Section 156 of the Code of Procedure the provision is 'the defendant against whom publication is ordered * * * may * * * upon good cause shown, be allowed to defend after the judgment, or at any time within one year after notice thereof and within seven years after its rendition, on such terms as may be just; and if the defense be successful, and the judgment, or any part thereof, has been collected or otherwise enforced, such restitution may thereupon be compelled as the court directs; *but the title to the property sold under such judgment to a purchaser in good faith shall not be thereby affected*'. The circuit judge holds that the saving clause, which we have italicized, inserted for the protection of innocent purchasers, was intended only for the protection of one who has purchased under a judgment obtained in a case where the judgment debtor 'has been duly and legally served by publication, over whose person the court acquired jurisdiction, and against whom judgment has been rendered'. It would be sufficient to say that such is not the language of the statutory provision; and, to give it the construction adopted by the circuit judge, it would be necessary to interpolate words into the statute which the legislature has not seen fit to insert therein. The section of the Code (Section 156) in which the provision here in question is found, after providing in which cases a defendant may be made a party to an action by publication, and after providing that in such cases the court may grant an order that service may be made

534

by publication, and after providing that certain other things should be done, provides, in the third paragraph of the section, that 'the defendant against whom publication is made (not that the defendant who has been duly and legally served by publication) may, on sufficient cause shown, be allowed to come in and defend', etc., but that when he does so, and he seeks to assail a judgment recovered against him in his absence, he cannot be allowed to divest rights of innocent purchasers, which had vested before any assault had been made upon the judgment, which upon its face was entirely regular, and free from any infirmity."

For the foregoing reasons this Court is of the opinion that all exceptions should be overruled and the judgment of Circuit Court affirmed, and it is so Ordered.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and OXNER concur.