17748

H. A. MADDEN and Ruby M. Sellars, Appellants, v. Edna S. MADDEN, Individually and as Executrix, etc., *et al.*, Respondents

(118 S. E. (2d) 443)

630

*Messrs. George F. Townes* and *Leo H. Hill,* of Greenville, for *Appellants,*

*Messrs. Hinson & Hamer* and *Leatherwood, Walker, Todd & Mann,* of Greenville, *for Respondent, Edna S. Madden,*

February 16, 1961.

LEGGE, Justice.

The controversy here concerns the disposition of property owned by M. E. Madden, a resident of Greenville County, at the time of his death on October 10, 1958. Mr. Madden was survived by his widow, Edna S. Madden, and by two children of a former marriage, namely: H. A. Madden and Ruby M. Sellers. He had executed a will on March 27, 1953, and another on September 19, 1957. The latter was admitted to probate in common form on October 16, 1958, and thereupon the said Edna S. Madden, who had been named therein as executrix, qualified as such.

On June 5, 1959, H. A. Madden and Ruby M. Sellers brought this action in the court of common pleas against Edna S. Madden individually and as executrix and joined as defendants two children of each plaintiff, as representatives *in esse* of contingent beneficiaries under the 1957 will. The case was thereafter transferred, by consent, to the County Court of Greenville County, and testimony was taken before the judge of that court on November 10, 1959. From his order of December 16, 1959, which at the request of counsel he held in abeyance to permit further argument, and which he confirmed by supplemental order dated March 31, 1960, the plaintiffs have appealed.

The complaint sought to have Edna S. Madden adjudged trustee, for herself and the other parties, of the property real and personal, owned by E. M. Madden at the time of his death. Its first two paragraphs relate to the situs of the property and the status of the parties. Parargaphs III and IV read as follows:

"III. M. E. Madden died on the 10th day of October, 1958, leaving in full force and effect his last will and testa-

ment dated September 19, 1957, which was duly proved and admitted to probate in the Probate Court in the County of Greenville, South Carolina, on the 16th day of October, 1958. This will and other records of the estate of M. E. Madden, deceased, are contained in Apt. 690, File 23, in the Probate Court. A copy of this will is attached to this complaint and designated as Exhibit No. 1. The contents of Exhibit No. 1 are incorporated by reference as a part of the allegations of this paragraph.

"IV. Prior to the execution of the will in Paragraph III, M. E. Madden had executed his will and testament dated in 1953, which will, prior to its revocation, was the valid and existing last will and testament of M. E. Madden. The provisions of this will in substance were that Edna S. Madden, the wife of M. E. Madden, took the home place on Wilson Street in fee simple absolute; that all the rest and residue of the real and personal property of M. E. Madden was devised and bequeathed one-fourth to H. A. Madden, his son, one-fourth to Mrs. Ruby M. Sellers, his daughter, and the remaining one-half to Edna S. Madden his wife."

The allegations of the succeeding paragraphs are, in substance, as follows:

V. That on or about September 19 and 20, 1958, M. E. Madden announced to his wife and his son and his daughter that he wished to execute a new will giving the home place to his wife for life, with remainder in fee to his son and daughter in equal shares, and giving his property, other than the home place, one-half to his wife and one-fourth to each of his said two children. "Edna Madden stated that these proposed provisions were objectionable to her, but that she would accept the provisions of the will described in Paragraph IV. She further stated that said will (described in Parargraph IV) was still in existence and in her possession, and that she would honor and respect its provisions and treat it as though it were the valid and existing will of M. E. Madden."

VI. That in reliance upon his wife's said promise "M. E. Madden assented to the conditions of the promise and did not then revoke or change his second will, having been induced to believe that the property would be distributed in accordance with the terms of the will set forth in Paragraph IV"; and that the parties present at the said family conference "agreed in the presence of the deceased that a distribution of the property would be made according to the terms of the will set forth in Paragraph IV and that as a result of this promise it would not be necessary to revoke the will set forth in Paragraph III nor to make a new will."

VII. That Edna S. Madden has refused to honor her promise to hold the property of her deceased husband "under the provisions of the will set forth in Paragraph IV, and has asserted complete title to all the property of M. E. Madden to the exclusion of the plaintiffs." That Edna's promise was made fraudulently, "for the purpose of inducing M. E. Madden not to revoke his will so that she might benefit from the terms of said will." And that as the result of her fraudulent acts she has been unjustly enriched.

Paragraph VIII alleges that a fiduciary relationship existed between M. E. Madden and his wife Edna S. Madden.

Paragraph IX describes the real property alleged to have belonged to M. E. Madden at the time of his death.

The prayer is: (1) that the court "declare Edna S. Madden to be trustee of the property owned by M. E. Madden at his death for herself and for the plaintiffs in accord with the provisions of the will of M. E. Madden set forth in Paragraph IV of this complaint"; (2) that she be ordered to execute a proper deed and bill of sale "conveying to the plaintiffs their interest in said property to which they would be entitled under the provisions set forth in Paragraph IV"; (3) for such further relief as may be equitable and proper.

Edna S. Madden, answering the complaint:

1. Admitted the execution by M. E. Madden of his will dated September 19, 1957, the admission of said will to probate and her qualification as executrix thereof;

2. Admitted the execution of the 1953 will and alleged upon information and belief that after the execution of the 1957 will Mr. Madden retained the earlier one in his possession because he "was undecided as to which of the two wills should constitute his last will and testament";

3. Admitted that on or about September 19, 1958, M. E. Madden, having expressed dissatisfaction with the 1957 will, conferred with her and the plaintiffs and they all agreed that the will that he had executed in 1953 should constitute his last will and testament, that all parties would honor and respect its provisions, "and, as alleged in Paragraph V of the complaint, that plaintiffs and the defendant would treat said will as the valid and existing will of the said M. E. Madden";

4. Acknowledged her readiness and willingness to "carry out the agreement alleged by plaintiffs in Paragraph V of the complaint", and "to have said will referred to in Paragraph V of the complaint admitted to probate as the last will and testament of the said M. E. Madden in lieu of the will heretofore offered for probate"; and, by way of prayer,

5. Joined "with plaintiffs in requesting permission to admit to probate the will of M. E. Madden, deceased, dated in 1953, in lieu of the will heretofore offered for probate, and for such other and further relief as to the court may seem meet and proper."

Of the four defendants other than Edna S. Madden, two who were minors, answered by their respective guardians ad litem, denying all allegations of the complaint and demanding strict proof thereof. The other two defendants, Miriam Madden and Mayse Sellers Dorsey, joined in the prayer of the complaint.

From the face of the pleadings, one could hardly imagine a more friendly lawsuit. Edna, ignoring the plaintiffs' accusation of fraud, admits the family agreement which she is charged with having repudiated, *viz.*, that all hands should

abide by the provisions of the 1953 will; she alleges her readiness and willingness to carry out that agreement; and she prays that the 1953 will be admitted to probate in lieu of the later will. (Actually, she does not "join with plaintiffs" in requesting permission to admit the 1953 will to probate, for the plaintiffs had requested nothing of the kind. Their complaint sought not the admission of the 1953 will to probate, but the enforcement of an alleged family agreement for distribution of the estate according to its terms despite the existence and probate of the later will.)

But at the trial the scene changed. Where before all had seemed sweetness and light, now was perhaps less sweetness, but certainly more light; for when the 1953 will was introduced in evidence by the plaintiffs it became apparent that its provisions were not what the plaintiffs in their complaint had alleged them to be. By that will the testator had devised the home place to his wife, Edna, as was alleged in Paragraph IV of the complaint; but, contrary to the allegations of that paragraph, he had bequeathed all of his personal property (which the testimony indicated was substantial) to his wife, absolutely, and had devised only his real estate (other than the home place) one-half to his said wife and one-fourth to each of his two children.

As to the family conference referred to in the pleadings the testimony of the parties was conflicting. Whether or not at that conference an enforceable agreement was reached with regard to nontestamentary disposition of Mr. Madden's property after his death, and, if so, what the provisions of that agreement were and whether or not they should be effectuated by impressing a trust upon the property in the hands of Edna S. Madden individually and as executrix, were matters not passed upon by the trial judge. They are, therefore, matters not properly before this court. *Carter v. Peace,* 229 S. C. 346, 93 S. E. (2d) 113; *Simonds v. Simonds,* 229 S. C. 376, 93 S. E. (2d) 107; *Branham v. Miller Electric Co.,* S. C., 118 S. E. (2d) 167.

The trial judge held that at the time of the execution of the 1957 will "the testator did not intend that the same should revoke the former will"; that he never thereafter manifested such intent; and that he "had not reached an intention in his own mind as to which of the two wills in question would constitute his last will and testament" until the family conference of September 19 or 20, 1958, at which time "he reached a conclusion as between the two wills" by selecting the earlier one.

We note, in passing, that it was nowhere in the pleadings alleged that the 1957 will was invalid for lack of testamentary intent. But, aside from that, we are of the opinion, after careful consideration of the entire record, that the trial court's holding just mentioned, viewed as a finding that testamentary intent was absent at the time of the execution of that will, was without adequate evidentiary support. The only testimony tending toward such finding was that of the defendant Edna S. Madden, to which we now refer. After she had testified that she had accompanied her husband to the office of the attorney who prepared the 1957 will, that her husband had carried with him the former will (which had been drawn by another attorney), and that when the signing of the new will had been concluded the attorney had, at Mr. Madden's request, given the earlier will back to him, Mrs. Madden's attorney propounded to her, without objection, the following question: "I will ask you if at that time your husband requested—handed both wills to you with the request that you keep them, put them away, that he didn't know which one he was going to use?" To this suggestion she replied: "Yes; he handed them to me and told me to keep them." Then she was asked: "Did you carry out his instructions?" And her reply was: "Yes." It is thus apparent from her testimony that this conversation between the testator and herself took place after the 1957 will had been executed; and it suggests not that the will that he had just executed was invalid, but rather that he considered it a valid testamentary, and therefore revocable,

instrument, to become effective upon his death unless in the meantime he should decide to "use" the earlier will to effect his testamentary dispositions. A will duly executed and declared by a testator to be his will is not invalidated for want of testamentary intent because at the time of its execution he may have intended to change it later. Until he consummates that intention by the execution of a later will that is in existence at the time of his death, or revokes it in some other manner prescribed by law, it stands as his last will and testament. Cf. *Henderson v. Henderson,* 183 Va. 663, 33 S. E. (2d) 181.

The remaining evidence convincingly shows that the 1957 will was executed *animo testandi.* The attorney who drew it and was one of the witnesses to its execution so testified. The will itself so expressly declared: its opening words were: "I, M. E. Madden * * * being of sound and disposing mind and memory, do hereby declare this to be my last will and testament, hereby revoking all other wills and testaments by me heretofore made." It made positive disposition of the testator's property, effective at his death. Its execution was attested by three witnesses who, over their signatures, declared that it had been "signed, sealed and published by M. E. Madden as and for his last will and testament * * *." Cf. *Lyles v. Lyles,* 2 Nott & McC. 531, 11 S. C. L. 531; *Meier v. Meier,* 208 S. C. 520, 38 S. E. (2d) 762. And Mrs. Edna S. Madden, upon advice of counsel who had prepared it and attended to its execution, herself presented it for probate and qualified as executrix thereof, making oath, as required by Section 19-432 of the Code of Laws, that it was the "true last will" of the said M. E. Madden.

Where a document is, upon its face, susceptible of interpretation as either a will or some other type of instrument, extrinsic evidence is generally admitted to show what the maker intended it to be. *Wheeler v. Meray,* Bailey Eq. 507, 8 S. C. Eq. 507; *Hargroves v. Meray,* 2 Hill Eq. 222, 11 S. C. Eq. 222.

The rule in some jurisdictions is that where the document is testamentary upon its face and its language raises no ambiguity as to the existence of the maker's intent, *animus testandi* is conclusively presumed and extrinsic evidence upon the issue is inadmissible. In others, extrinsic evidence upon the issue of testamentary intent is permitted in proper cases despite the fact that the language of the document clearly indicates that it is testamentary in character. The subject is fully discussed and annotated in 21 A. L. R. (2d) at pages 319 *et seq.,* where reference is made to many decisions on both sides of the question. Extended review of them is unnecessary here because the question of admissibility of such evidence was not raised in the case at bar. But, assuming its admissibility, we think that such evidence, when offered to negate testamentary intent where the will has been executed in due form by a mentally competent testator not influenced or coerced or controlled by outside force, should be clear, cogent and convincing. By no lesser degree of proof should parol evidence be permitted to outweigh the sanction of so solemn an act. The testimony of Edna S. Madden falls short of that standard, and furnished no adequate basis for the conclusion that the 1957 will had been executed without testamentary intent.

The order under appeal, having thus declared the 1957 will invalid, proceeded to hold that at the family conference the testator, having both wills in his possession and being uncertain as to which of them he intended to use, decided, with the acquiescence of the three beneficiaries named in both, to use the earlier one, and that, although he did not physically destroy the later one, he did so in effect, and thus revoked it, by announcing such decision. And the order held, on both the grounds mentioned, that the 1953 will was the last will and testament of M. E. Madden and that it should be admitted to probate in lieu of the 1957 will.

The conclusion that the 1957 will was revoked at the family conference is manifestly inconsistent with the holding that it was invalid for lack of testamentary

intent, for if it was invalid there was nothing to revoke. We think that the holding as to revocation was erroneous. *Animus testandi* existing at the time of its execution, the 1957 will became at that moment a valid testamentary instrument. As such, it was ambulatory and revocable, but its effectiveness awaited only its existence, unrevoked, at the time of the testator's death. Neither his retention of the earlier will, nor his uncertainty as to whether he might ultimately decide to use the earlier will in its stead, nor his decision, if such there was, to use the earlier will, could effect such revocation. He could revoke it only by one of the methods prescribed in Section 19-221 of the 1952 Code as amended (48 Stat. at L. 1745), which reads:

"No will or testament in writing of any real or personal property or any clause thereof shall be revocable but by some other will or codicil in writing, or other writing declaring the same, attested and subscribed by three witnesses as required by § 19-205, or by destroying or obliterating the same by the testator himself, or some other person in his presence, and by his directions and consent."

We have carefully considered the cases of *Taylor v. Taylor*, 2 Nott & McC. 482, 11 S. C. L. 482, and *Kollock v. Williams*, 131 S. C. 352, 127 S. E. 444, upon which the trial judge based his order and upon which respondents rely in their brief; but the facts in those cases differed widely from those in the case at bar, and the principle of law there announced (with which we are in full accord) is not applicable to the factual situation here.

In the *Taylor case* the testator had made a will in 1810. On July 15, 1816, when he was absent from home and critically ill, he executed another, after much importuning; he expressed dissatisfaction with it on the same day, and on the next day, July 16, he personally cancelled it, tearing his name from it; another will was presented to him that evening, but he was too weak to sign it; early the next morning he died. The Court of Ordinary, following the rule

of the civil law that the execution of a second will annihilates the first and that to establish revival of the first requires evidence other than the destruction of the second, admitted to probate the will of July 15, 1816, and rejected that of the 1810. That decree was reversed by the circuit court, and the judgment of the latter court was affirmed on appeal. The opinion held:

1. That the rule of the civil law was not applicable, the case being governed by the common law, whereby the earlier will is presumed to be restored to its active energy by the cancelling of the later one; and

2. That the evidence supported the jury's finding that the 1816 will had been "acquiesced in by the testator to avoid importunity, and not *animo testandi*." (It is apparent from the facts stated in the report that the jury's finding was based not upon evidence of lack of testamentary intent in the sense applicable to the instant case, but upon proof of coercion and undue influence overcoming the dying testator's power to think and act freely.)

In *Kollock v. Williams,* the testatrix, who had executed a will on May 8, 1918, executed another on June 15, 1918. After her death a few months later, the will of June 15 not having been produced or otherwise accounted for, the circuit court, confirming the judgment of the probate court which had admitted the will of May 8 to probate in due form of law, held:

1. That the evidence showed that the testatrix had destroyed the will of June 15, *animo revocandi;* and

2. That under the common law rule approved in *Taylor v. Taylor, supra,* the will of May 8 had not been revoked by the execution of the will of June 15, the revocatory clause in the latter being testamentary in character and therefore not effective *in praesenti.*

Upon appeal, this court, affirming: rejected appellants' contention that after June 15 the testatrix lacked mental capacity to destroy the latter will *animo revocandi;* held

that the evidence sustained the trial court's contrary finding; and declared that that court had correctly concluded, under the rule approved in *Taylor v. Taylor,* that the execution of the later will had not of itself operated to revoke the former.

The order appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with the views herein expressed.

Reversed and remanded.

TAYLOR, OXNER and MOSS, JJ., concur.

STUKES, C. J., not participating.