557 So.2d 427 (1990)
Mrs. Joann HENDRY, Plaintiff-Appellant,
v.
SUCCESSION OF Marguerite Ryan HELMS, Defendant-Appellee.
No. 88-996.
Court of Appeal of Louisiana, Third Circuit.
February 7, 1990.
Writ Denied April 6, 1990.
Charles Schrumpf, Sulphur, for plaintiff-appellant.
David Dwight, Michael D. Carlton, Stockwell, Sievert, Viccellio, Clements & Shaddock, Charles D. Viccellio, Lake Charles, for defendant-appellee.
*428 Before GUIDRY, STOKER and YELVERTON, JJ.
GUIDRY, Judge.
Ms. Marguerite Ryan Helms executed a statutory will on July 1, 1985. On April 20, 1988, Ms. Helms met with her attorney, Charles Viccellio, and delivered to him a six page handwritten document (hereafter the document) which was written, dated and signed by her on April 13, 1988, which document we annex as appendix I. Ms. Helms died April 21, 1988 and thereafter, the July 1985 statutory will was probated.
Plaintiff-appellant, Joann Hendry, the only surviving relative of Ms. Helms, instituted this suit seeking to have the probate of the July 1985 will set aside and to have the document declared a valid olographic testament. The trial court dismissed plaintiff's petition concluding that, although written dated and signed by the decedent, the document did not, within its four corners, evidence testamentary intent on the part of the preparer. In making this determination, the trial judge, in oral reasons for judgment, stated:
"... [I]t is not clear to the Court that this is a document which was intended to be the last will and testament of the decedent. That is seen in the document itself when it appears that this document contains information which is intended to be furnished to someone else. There's all kinds of things in here, like how the telephone bill is paid, how the gas bill is paid, and where some insurance policies are, and where a gravesite is located and that its prepaid, and various other things, which is not usually found in wills or testaments. The Court concludes that this is merely a list, something that was being furnished to her attorney as information..."
Plaintiff appealed.
Charles Viccellio, Ms. Helms' attorney, was the only witness to testify. Mr. Viccellio, as Notary Public, prepared the 1985 statutory will and officiated at its execution. He testified that on April 20, 1988, which was one week after preparation of the document, Ms. Helms appeared at his office to deliver the document and discuss with him the preparation of another statutory will. She was to return the following week to execute the new statutory will which Mr. Viccellio was to draft, pursuant to their discussion and the document which she left with Viccellio. Ms. Helms died the following day.
In brief to this court, appellant, in effect, concedes that the document was not intended by the decedent to be her last will but urges that since it is in valid form and expresses decedent's last wishes, it is entitled to probate. In argument, appellant states:
"There is no question that her last intentions were as found on the olographic will. There is probably not much question either that she wanted Mr. Viccellio to transform her wishes from that will to a statutory testament. She apparently died before that could be done. Are her last wishes to be frustrated because of the fact that she died before her lawyer could complete the simple task of typing up her demands into a statutory form?... Thus the trial court erred in finding that this particular paper had to be the paper intended by Mrs. Helms to be her last will."
We discern no error in the trial court's conclusion that the document dated April 13, 1988 is not the olographic last will and testament of Ms. Marguerite Ryan Helms.
A testament is defined by our law as an act of last will clothed with certain solemnities, by which the testator disposes of his property, either universally or by universal title, or by particular title. La.C.C. art. 1571. La.C.C. art. 1570 provides for the form of donations mortis causa as follows:
"No disposition mortis causa shall henceforth be made otherwise than by last will or testament. Every other form is abrogated.
But the name given to the act of last will is of no importance, and dispositions may be made by testament under this title or under that of institution of heir, of legacy, codicil, donation mortis causa, or under any other name indicating the last will, provided that the act be clothed *429 with the forms required for the validity of a testament, and the clauses it contains, or the manner in which it is made, clearly establish that it is a disposition of last will.
Thus an act of last will, by which an individual disposes of his property or of part thereof, in any manner whatsoever,* whether he has or has not charged any one with the execution of his last will, is considered as a testament, if it be, in other respects, clothed with the formalities required by law."
The olographic testament is that which is entirely written, dated and signed by the hand of the testator. It is subject to no other formality. La.C.C. art. 1588.
There are two essential requirements for a valid will, i.e., the act must be in valid form and the clauses it contains, or the manner in which it is made must clearly establish that it is a disposition of last will. The document is in valid form, being entirely written, dated and signed by the decedent. However, in our view, the document fails as a valid will because it lacks the necessary animus testandi. Despite the fact that the document contains terms which arguably reflect an animus testandi (use of the words "bequest" and "bequests"; "to Mrs. Carl W. Hendry (Joann); "Trust Fund and divided among-equally"), the record makes crystal clear that the decedent did not intend the document to be her last will and testament. As found by the trial court, the document, considering the manner and the circumstances prompting its confection, was obviously intended as a listing of information to be used by Mr. Viccellio in the preparation of a statutory will for Ms. Helms. The testimony of Mr. Viccellio, introduced without objection, is unequivocal on this point. Further, there is no contrary evidence, i.e., supporting the conclusion that Ms. Helms intended the document as her olographic last will.
In Succession of Patterson, 188 La. 635, 177 So. 692, 694 (1937), our Supreme Court quoted approvingly from 28 Ruling Case Law, § 3, p. 59 as follows:
"In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament." Article 1712. But "* * * in the absence of a testamentary intent, there can be no will. Furthermore, the animus testandi must exist when the instrument is executed or acknowledged, and the intent must apply to the particular instrument produced as a will. A paper is not established as a man's will merely by proving that he intended to make a disposition of his property similar to or even identically the same as that contained in the paper. It must satisfactorily appear that he intended the very paper to be his will * * *" (Emphasis ours)

Appellant suggests that the quoted language in Succession of Patterson, supra, is dicta and is not found in our Civil Code. We do not agree. La.C.C. art. 1570 clearly requires that the particular document presented for probate must reflect an animus testandi since it provides that "... a testament and the clauses it contains, or the manner in which it is made, clearly establish that it is a disposition of last will".
For these reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
YELVERTON, J., dissents and assigns written reasons.
YELVERTON, Judge, dissenting.
I cannot agree with this result, or the reasoning behind it. The instrument in question was entirely written, dated, and signed by the hand of the deceased. On its face its wording clearly shows a testamentary intent. Ms. Helms was 85 years old when she wrote it. Her words leave no doubt that she intended the dispositions to take effect upon her death. What she wanted was clear. She died eight days later. Mr. Viccellio, the only witness in this case, said the language was "self-explanatory". No question has been raised concerning the testratrix' capacity or the presence of undue influence. Moreover, *430 there is nothing in the document suggestive of an intent to make a more formal will. The instrument was valid on its face, it was an act of last will in form and substance, and it should now be probated.
I cannot distinguish the testamentary language of this document, on its face, from that of Succession of Hammett, 183 So.2d 416 (La.App. 4th Cir.1966), writ denied, 249 La. 66, 184 So.2d 735 (1966). This was the will in Hammett:
 "Jan. 30, 1961
"To whom it may concern,
"75% of all my monetary, real estaste [sic] and stock holdings to Sam Zemurray III with James H. Atkinson as trustee to be held in trust at Sam's discretion until Sam is 35 years old.
"25% of all my monetary, real estaste [sic], and stock holding to James H. Atkinson.
"Donald Albert Hammett is no longer my husband and I leave him nothing.

"Anne Zemurray Hammett"
The Hammett document was found to clearly indicate testamentary intent. The instrument before us in the present case expresses with equal clarity a testamentary intent.
The first (of two) reasons given for the majority opinion is said to exist in the document itself. The majority regards as nontestamentary some language concerning "things ... not usually found in wills or testaments". I disagree, first because the entire content of the document reveals that Ms. Helms was contemplating death; everything she wrote down was useful to the person administering her estate. This was not a textbook olographic testament. Few are. More importantly, however, even if this instrument contains some superfluous information, the majority has cited no authority for the novel proposition that an olographic will is to be rejected for that reason. By introducing a requirement that olographic wills must stick to the subject or face nullity, the majority has made new law. There are numerous examples here and elsewhere upholding wills that contain information which would not be found in a model olographic testament. See, e.g., In re Billis' Will, 122 La. 539, 47 So. 884 (1908), and Appeal of Thompson, 375 Pa. 193, 100 A.2d 69 (1953).
The other reason given by the majority is based on what happened a week after Ms. Helms penned the instrument. Mr. Viccellio testified that on April 20 the deceased brought the will to his office and left it with him for the preparation of a more formal document. The majority construes the instrumentin the light of what she did a week after she wrote it, and concludes that the instrument itself did not reflect an animus testandi. Having thus denounced it as a will, the majority finds it was but a set of notes.
Had Ms. Helms died in her sleep the night of April 13, 1988, after writing this instrument, the document would have been unanimously received as an act of last will. But Ms. Helms lived for eight more days, and on the seventh day she went to see her lawyer and left that instrument with him. As a result, instead of her last will being carried out, her last wishes were frustrated.
The factual content of this case is made up of only two elements. There is the will itself, and there is the conduct of Ms. Helms a week later.
The first place to look for testamentary intent is in the instrument itself. The majority does not do this. The majority looks at what Ms. Helms did a week later, and decides from that fact that the document was a set of notes. The instrument itself does not say that it was a draft, or a set of notes. Nothing on its face supports an inference that its author contemporaneously with its execution intended to make a more formal will. If the first place we should look to find such an intent is in the instrument itself, we will not find it there.
With the proposition that a writing in the form of a will is not a will if it was not intended to be a will, I could not agree more. But the animus to make a more formal will goes to the animus testandi, and must exist in the document itself. If it cannot be found there, I believe that evidence of a later decision to have a more *431 formal will executed is inadmissible to establish that the animus was contemporaneous with the writing. All that such evidence proves is that the deceased made a later decision to have a more formal will executed.
On this subject there is an annotation in 46 A.L.R.3rd 938, WillsTestamentary Intent, which collects the cases, most of which deal with olographic instruments, that have considered whether the expression of an intention, in a document, to make a more formal will or to make a further disposition of property affects the testamentary character of such document. The annotation points out that no general rule can be laid down, but that "... the question depends in each particular case on the intention of the testator as deduced from the language used" (my underscoring).
Of course, the testatrix was at liberty to make another will. It is of the essence of a will that it be revocable. La.C.C. art. 1690. She had not only the right to make another will, but also the right to have the same will put into a different form. But those are not the issues before us. The issue is testamentary intent on April 13, 1988.
For a document to constitute one's last will and testament it must, by its own language, show on its face that it purports to dispose of the property of the testator on his death. Succession of Hammett, supra; Succession of Shows, 158 So.2d 293 (La.App. 1st Cir.1963), aff'd 246 La. 652, 166 So.2d 261 (1964). The rule is no different in the common law. From the case In re Estate of Jacobson, 460 Pa. 118, 331 A.2d 447 (1975), comes the following:
No rule is more settled in regard to wills than the general rule that the testator's intent, if not unlawful, must prevail. The common law has consistently proclaimed that the testator's intent is the crux in interpreting every will and that intent must be ascertained from the language chosen by the testator. [citations omitted] Courts will not search for the testator's intent beyond `the four corners of his will' when the language of that document is sufficiently clear and unambiguous so as to lead the court to believe it can with reasonable certainty effect a distribution in accordance with the testator's desires. [citations omitted]
The courts of several of the states have adopted the rule that where a document is testamentary upon its face, animus testandi is conclusively presumed and extrinsic evidence upon the issue will not be received. See 21 A.L.R.2d 319, Anno: Testamentary IntentEvidence. At page 341 of the annotation, seventeen states are listed as supporting this rule. One of those states, in the case of Nugent v. Wright, 277 Md. 614, 356 A.2d 548 (1976), adopted this language:
`... if the paper be perfect on its face and validly executed, and if, by its terms, it discloses that it was written animo testandi, it must, if voluntarily made by a competent testator, stand as his will.... In such case parol declarations of the deceased can never be received for the purpose of revoking, or altering, or in any way preventing the instrument from operating as a will....' [citation omitted]
The annotation points out that some states permit extrinsic evidence when animus testandi is left in doubt by the language of the instrument. It appears, however, that even when evidence is admitted, "such evidence, when offered to negate testamentary intent ... should be clear, cogent and convincing." Madden v. Madden, 237 S.C. 629, 118 S.E.2d 443 (1961).
We have provisions in the Louisiana Civil Code (Articles 17141717) authorizing the receipt of evidence of circumstances which may aid in ascertaining the intent of the testatrix as to ambiguous dispositions. There is no ambiguity in this instrument concerning the dispositions that Ms. Helms wished to make either as to the identity of the legatees (C.C. art. 1714), or the object bequeathed (C.C. art. 1716), or the quantity bequeathed (C.C. art. 1717).
We have no codal rule regarding the receipt of extrinsic evidence where the testamentary intent of the testatrix is in question. Nor is there a law specifically addressing whether extrinsic evidence, when and if admissible, may include parol declarations *432 of the deceased. However, C.C. art. 1576 condemns oral testaments (and by necessary implication, proof against written testaments by parol declarations of the deceased). It makes sense to say that the reason we do not have a codal rule authorizing the admission of oral declarations of the deceased to determine testamentary intent, is because that determination must be based solely on the written words of the testatrix. See La.C.C. art. 1570, quoted in the majority opinion. The instrument's recitals make it either an act of last will, or not an act of last will, much like the date on a will is either a date, or not a date. Succession of Holloway, 531 So.2d 431 (La. 1988).
The wisdom of a rule prohibiting receipt of evidence of oral declarations of a deceased for the purpose of revoking, altering, or in any way preventing the instrument from operating as a will, is nowhere better illustrated than in the example of the very case that is before us. The extrinsic evidence relied on was something that happened a week after she wrote this instrument. In this record only the instrument itself is evidence of the deceased's state of mind when the will was confected and during the seven days thereafter. The danger in tampering with testamentary intent by admitting parol evidence of what a deceased said a week, or a month, or a year, or ten years after an olographic expression of such intent, needs no elaboration.
Ms. Helms wanted Mr. Viccellio to prepare a more formal (in her mind) will for her. That much is certain. But when did that intention come into existence? Was it because a neighbor, a friend, a newspaper article, suggested to her that it would be safer to have an attorney draw up the will? Was it an after-the-fact decision on her part to go see a lawyer? Was it done out of an abundance of precaution? Are these inferences from the facts any less reasonable than the inference that she never intended this writing as an act of last will in the first place?
Having gone this far, will we be bound in every future case to admit the testimony of any witness, in the case of any olographic will, that the testatrix made known to the witness, after the instrument was made, that it was his or her intention to take that instrument to a lawyer and have him draw up a more formal will? If we do that, will it not be only one more small step to allow testimony of a witness that a testatrix, after having made an olographic will, told the witness that she had changed her mind and did not want that to be her will? Or that she wanted some other writing, not itself evidencing testamentary language, to be elevated to the status of a testament? How do we reconcile what is happening in the case before us with La.C.C. art. 1576, which rejects, as a matter of substantive lawnot waivable, as would be the case if this article stated only a rule of evidence parol declarations of a deceased that she made, or did not make, an act of last will?
As a final observation, even if Mr. Viccellio's testimony can properly be considered, it has no probative effect on the ultimate issue before us. The ultimate issue is Ms. Helms' intent. "The testator's intention is his will. This is the first rule of interpretation, to which all others are reduced. The intention must be enforced as far as it can be done legally." Succession of Fertel, 208 La. 614, 23 So.2d 234 (1945). No one, least of all Mr. Viccellio, has raised the suggestion that Ms. Helms' April 13 writing did not represent her wishes. Mr. Viccellio, a highly reputable and respected attorney in this state, testified that he planned to present this document to the court for consideration for probate along with the statutory testament of 1985. His pleadings were already prepared when the present lawsuit was filed. The filing of those pleadings was rendered unnecessary when the issue was raised by the present suit. Mr. Viccellio never testified that the deceased told him the document was something else besides a will. In fact, the document was never identified in their conversation. This is shown by the following question and Mr. Vicellio's response in this testimony:
Q Did you have discussions with Ms. Helms at the time she gave you this as to what this document was?
*433 A No.
When Mr. Viccellio stepped down from the witness chair, not one word of testimony was in the record that the olographic instrument of April 13, 1988, was not an act of last will.
The lawsuit by which this case comes before us was an action to nullify the 1985 statutory will, and substitute the 1988 will in its place. That is obviously not what the plaintiff intended. What Ms. Hendry in her lawsuit intended was to have the olographic testament of April 13, 1988, probated along with the statutory will of 1985, to the extent that their dispositions are not incompatible or different, in which case the later will is controlling, as La.C.C. art. 1693 directs. To the extent that the judgment declined to declare the 1985 will a nullity, it was correct. To the extent that it declined to declare the 1988 will valid, I believe it was wrong. In my opinion we should render judgment herein accordingly, affirming in part and reversing in part, and recognizing the April 13, 1988, writing as a valid olographic testament. The case should then be remanded to the district court for further succession proceedings giving effect to both wills as mandated by La.C.C. art. 1693.
*434 
*435 
*436 
*437 
*438 
*439