WILLIAM J. COWLEY AND MARGARET A. FONTAINE v. EMMA KNAPP AND JOHN GORMAN.

1. By a will made November 15th, 1866, the testatrix devised all her estate to her husband, in fee. In January, 1876, she and her husband being about to travel abroad, she made a will, beginning with the words, "In case of anything happening us, I would wish," &c., and devising her estate to her sister. *Held*—that the second will was contingent; that the contingency provided for was not the death of her

husband before herself, nor the death of both by the same accident, but was the death of both while upon their travels.

2. In construing a will, it will be concluded that the testator contemplated and made provision for a lapse only when there is a clear intimation to that effect.

3. An instrument in the form of a letter held to be a valid will.

---

In ejectment. On rule to show cause why a new trial should not be granted.

Argued at February Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL and DIXON.

For the plaintiffs, *B. C. Chetwood*, and *Malcolm Campbell*, of New York.

For the defendants, *Joel Parker*.

The opinion of the court was delivered by

DIXON, J. This is an action of ejectment. The land in controversy, lying at Deal, in Monmouth county, belonged to Mary Boyle, wife of Edward Boyle, at the time of her death, April 12th, 1876.

The plaintiffs claim by inheritance from Edward Boyle, who died April 15th, 1876, and who, they say, became entitled, as devisee of his wife, under a will dated November 15th, 1866, which provided as follows: " *Third.* All of my property, of every nature, whether real or personal, left after full payment of my just debts, I give, devise and bequeath to my husband, Edward Boyle, to have and to hold the same, to him, his heirs and assigns, absolutely, forever."

The defendant Emma Knapp claims as devisee, under an alleged will of Mary Boyle, dated January 18th, 1876, in the form following:

" MY DEAR FATHER:

" In case of anything happening us, I would wish you to take charge of our property. By law, I suppose it would be

divided between all my sisters. I would wish it otherwise. I wish all the property to be sold except any portion of Deal Emma would wish to retain for herself; then the money to be put in government securities, or any other sure investment. I make Emma Knapp my sole heir. I know she is just, and will give to those who need, and will be guided entirely by your advice.

Your affectionate daughter,

"January 18th, 1876.        MARY BOYLE,

"120 East 26th street.

"Witnesses of signature—
  "ANNIE JACOB WALSH,
  "CATHERINE CLOAKE."

It will be necessary to examine only the defendants' claim, for if that be substantiated, the plaintiffs must be without title.

As to the instrument last recited, the plaintiffs contend, first, that it is not of a testamentary character.

Its due execution, in accordance with the requirements of our statute, was sufficiently proved by the testimony of Annie Jacob Walsh (now Kelley), one of the subscribing witnesses. At that execution, it was declared by Mrs. Boyle to be her will. Its opening expression, "In case of anything happening us," clearly indicates that it was intended to take effect only in the event of her death (*Roberts* v. *Roberts*, 2 *Sw. & Tr.* 337 ; *In goods of Porter, L. R.*, 2 *P. & D.* 22 ; *In goods of Robinson, L. R.*, 2 *P. & D.* 171,) and the rest of the instrument declares her wishes as to the disposition of her estate in the juncture contemplated by her. Her capacity is not disputed. These are all the essentials of a valid will ; and the first position of the plaintiffs cannot, therefore, be maintained.

The plaintiffs insist, secondly, that this will was designed to take effect only under circumstances which never occurred. At the time of its execution, the testatrix and her husband were making preparations for a European tour, and the plaintiffs claim that she intended, by this will, to provide only for

such contingencies, during that voyage, as would prevent the operation of the devise which she had previously made in her husband's favor, viz., the death of both by the same accident, where her husband's survivorship could not be shown, or his death before her own. In fact, both died in Paris, of a fever contracted in Italy, during their trip, the husband outliving the wife but three days. The defendants claim that this occurrence was within the contingencies provided against in the will.

The plaintiffs' contention, that the will must be limited to the dying of husband and wife simultaneously, by accident, seems to be too narrow. It was a possible event, indeed, but with the present safeguards of travel, quite unlikely; and the reasons which would induce the testatrix to make provision for that chance would, with as much force, dictate arrangements for more probable occurrences. The phrase, "anything happening us," is not that which she would have adopted, had she thought only of such a death; other more expressive terms would naturally have suggested themselves. It is true that she couples herself and her husband as in the same category, but the whole question is as to its limits, and there is no ground for making them so narrow as is here claimed.

The simultaneous death of both is one of those events which would result in a lapse under the earlier will of the testatrix, and we come, therefore, to consider the wider position of the plaintiffs, that only in the case of a lapse was this last will meant to operate. Two arguments are presented in favor of this proposition, viz., that the later will does not revoke the former, and hence must, as far as possible, be interpreted in harmony with it; and, secondly, that as the testatrix seems to speak of the law dividing "our property," i. e., her own and her husband's, between her sisters, "in case of anything happening us," she must have had in mind her husband's dying before herself, in which event her husband's property would have passed to her by his will, made in her favor October 17th, 1866, and on her death, intestate, would be divided among her sisters.

These views have some force, but they are not convincing. Undoubtedly, the first object of the testatrix's bounty was her husband, and she intended that he should have her estate, if he survived her long enough to enjoy it, but she could have had no motive for leaving it to vest in him at her death, if the sole effect of so doing were to have it transmitted to his heirs. He had no relatives nearer than an aunt or cousin, and these she had probably never seen or heard of, while her own father and sisters were living about her, her sister Emma being a member of her household. While, therefore, the first will is to be observed so far as it is consistent with the fair import of the last, yet if it shall be found that, under adjudged cases, the terms of the last somewhat infringe upon the first, there is no reason, in the probabilities of the case, for at all straining those terms to carry out a supposed intention of the testatrix. Then as to the expression, "*our* property;" that may or may not refer to the estate of both herself and her husband. It may refer to only her own possessions, and have been a mode of expression common to her in speaking of those possessions with her father, to whom this testamentary letter is addressed. Such terms are often so used among those whom community of feeling pervades. But even if it relates to the property of herself and her husband, still it is noticeable that she does not use the word in the devising clauses, but only in the sentence where she asks her father to take charge of it. Such a request she might make of her father, as to the property of both, in case of their death abroad, without having in mind the idea that her husband's property had become hers by survivorship. And when, in the next sentence, she proceeds to speak of the disposition which the law would make of her estate, her mind could easily pass from the estate of both to that of herself alone, without noticing that her pronouns did not indicate the transition. Such a slip, in a familiar letter like this, would be not at all strange; and it would be giving too much weight to mere verbal criticism, if it were allowed to force a conclusion which courts have generally regarded as improbable.

Without, then, considering these arguments as conclusive, what, in the light of the circumstances surrounding this testatrix, when she made this will, and of approved rules of construction, should be its interpretation?

The phrase, " in case of anything happening us," is equivalent to " in case of the death of myself and my husband." Referring to a similar phrase, " in case of her death," Sir William Grant said : " The words in which the bequest over is expressed, have not, in themselves, nor have they by construction, received a precise and definite meaning, in which they must be uniformly understood. The expression itself is inaccurate, as it applies words of contingency to an event which is certain. No man can, with propriety, speak of death as a contingent event, which may or may not happen. When, therefore, a testator so expresses himself, the question is what he means by that inaccurate expression. He may, perhaps, have had some contingency in his mind, * * * and then the inaccuracy consists in not specifying the period to which the death was to be referred. He might have meant to speak generally of the death, whenever it might happen, and then the contingent or conditional words must be rejected, and words of absolute signification must be introduced ; and, accordingly, in every instance in which these words have been used, the courts have endeavored to collect from the nature and circumstances of the bequest or the context of the will, in which of these two senses it is most likely this doubtful and ambiguous expression was employed." *Cambridge* v. *Rous*, 8 *Ves.* 12.

Since, in order to reach the conclusion that these words refer to death generally, whenever it may happen, it is necessary to reject, altogether, the idea of contingency which the words naturally import, I think that conclusion should be adopted only when all others are excluded, and I agree with the plaintiffs that it is not warranted in the present case. The testatrix had in mind something which might or might not happen. It is possible to belive that she had in mind the death of her husband before her own ; but many cases have

held that this interpretation is to be entertained only when no other reasonable contingency can be discovered. Hence, Mr. Jarman says : " Although, in the case of an immediate gift, it is generally true that a bequest over, in the event of the death of the preceding legatee, refers to that event occurring in the lifetime of the testator, yet this construction is only made *ex necessitate rei*, from the absence of any other period to which the words can be referred, as the testator is not supposed to contemplate the event of himself surviving the objects of his bounty." 2 *Jarman on Wills* 665.

So Lord Brougham said : " There can be no question that a bequest to any person, and in case of his death to another, is an absolute gift to the first legatee, if he survives the testator. * * * But, although the courts have resorted to the lifetime of the testator, in the absence of any other period, by reference to which the generality may be restricted, this construction has always been adopted with some reluctance, founded, as it is, upon a supposition which, if not violent, is yet somewhat strong, inasmuch as the maker of a will does not naturally provide for the event of his surviving his legatees, the selected objects of his posthumous arrangements. Such a construction has accordingly been termed "unnatural" by one Chancellor, and another, Lord Hardwicke, has traced the origin of the term " lapse " to the supposition that the possibility of the legatee dying in his lifetime escaped the observation of the testator. * * * It may thus be stated, as a general proposition, that while the bequest over is in case of the legatee's death, and no other reference can be made, the period taken is the life of the testator ; but where another can be found, that will be preferred, to avoid the supposition of the testator's having contemplated and provided against a lapse." *Home* v. *Pillans*, 2 *M. & K.* 15.

Similarly, in *Lord Douglas* v. *Chalmer*, 2 *Ves., Jr.*, 501, where the bequest was to the testatrix's daughter, " and in case of her decease," to her daughter's children, Lord Loughborough, being urged to hold that to be a bequest over only in case the testatrix survived her daughter, said : " Without

express words, or some very particular intimation of that intention, it would be such a construction against the natural import of the expressions used, as the court would not be warranted in making." And he preferred to regard the bequest over as absolute upon the daughter's death, whenever it should happen.

Now, in the present case, there is not only a contingency suggested by the circumstances of the testatrix, different from the death of her husband in her own lifetime, but the very words in which she refers to the contingency provided for, indicate that it was not such a lapse. She says, "in case of anything happening us." Here, as has been remarked, she puts herself and her husband in the same category. She no more refers to her surviving him than she does to his surviving her. The question of survivorship was not in her thoughts at all. Her mind was upon the travels abroad, for which she and her husband were preparing, and her purpose was that if, in the course of those travels, death should overtake them, then this will should be operative. This was the contingency which led her to speak of their death as a thing which might or might not happen; and it was very natural that, in view of it as a not improbable event, she should make the devise which this will contains. If it should come to pass, her husband would not have an opportunity of enjoying her estate under her earlier will, and there remained only her own kindred as objects of her affection and bounty. Having, then, this contingency to meet the expressions of the will, the arguments in favor of the notion that the testatrix contemplated only a lapse, are not strong enough to constrain the mind to adopt it. They do not amount to that "very particular intimation of intention" which Lord Loughborough required to lead him to such a conclusion.

As, therefore, the testatrix and her husband did both die upon their travels, the testamentary paper of January 18th, 1876, became operative, and under it, the title of the premises in controversy passed to Emma Knapp, one of the defendants. Hence, the non-suit against the plaintiffs must stand, and their rule to show cause be discharged.