200 N.J. Super. 538 (1985)
491 A.2d 1292
IN THE MATTER OF THE PROBATE OF THE ALLEGED HOLOGRAPHIC WILL OF ESTELLE B. COHEN, DECEASED.
Superior Court of New Jersey, Appellate Division.
Argued February 19, 1985.
Decided April 15, 1985.
*539 Before Judges McELROY, DREIER and SHEBELL.
David B. Rubin argued the cause for appellant (Rubin, Rubin & Malgran, attorneys; David B. Rubin on the brief).
Richard P. Feldman argued the cause for respondent (Kovacs, Horowitz & Rader, attorneys; Richard P. Feldman on the brief).
The opinion of the court was delivered by McELROY, P.J.A.D.
Appellant Faye Cohen challenges the probate of the holographic will of her deceased daughter, Estelle Cohen, contending the will is a conditional testamentary disposition void because the condition has not been fulfilled. The trial judge held that Estelle's will was intended to be a permanent testamentary *540 disposition and admitted the will to probate. Faye Cohen appeals. We affirm the oral decision of Judge Robert A. Longhi.
The parties stipulated that the will was written and duly executed by the decedent and no issue is raised as to its authenticity. The operative facts follow.
In January 1982, Estelle Cohen, who was suffering from kidney disease and receiving regular dialysis treatments, arranged a Florida vacation at the home of her cousin, Rosalie Niemtzow. At that time Estelle shared her Perth Amboy home with her mother, the appellant. Estelle was unmarried and had no children.
On February 11, 1982, one day before she was to leave for Florida, Estelle wrote the following will:
 2/11/82
 To whom it may concern;
In the event that something should happen while I am away. I wish to state forever & eternity the following:
1. All my debts are to be paid in full.
2. My mother living with me is to be kept in the house until such time as she is no longer capable.
3. My house is to go to Eleanor Dunay. Its contents divided between Joseph, Marianne & John with one exception that is the china cabinet & contents to go to Joseph Dunay 
4. The ... Diamond to Stuart Niemtzow.
5. The Basket to Patti Niemtzow.
6. I leave $500.00 to Mark David Cohen of Dallas, $500.00 to Marcia Cohen Murphy, $500.00 to Greg Cohen
7. To Stanley Cohen the sum of $1.00
8. All other monies & property to be used to care for Fay Cohen  after which any residual is to revert to Mrs. Eleanor Dunay.
9. My car to Joseph Dunay.
10. I hereby appoint my attorney Oliver Kovacs as administrator of this estate.
 (313) Rector St.
 Estelle B. Cohen
 2/11/82
On February 12, 1982, Estelle, as planned, arrived in Florida. During her stay she received dialysis treatments. On February *541 18, 1982, she returned to her Perth Amboy home and remained there until her death, on August 13, 1983, from renal failure and arteriosclerotic disease. The holographic will was found with her personal papers. No subsequent will was ever executed.
New Jersey courts have not heretofore directly addressed a will worded as is this one. The only New Jersey case we have found that deals with a will made in contemplation of travel is Cowley v. Knapp, 42 N.J.L. 297 (Sup.Ct. 1880). That case is clearly distinguishable on its facts and of no help in resolving the present matter. Similar wills have been treated in other jurisdictions, but because each case stands on its own facts and choice of words, little purpose is served by a case by case analysis. A representative collection of these cases may be found in Annotation, "Determination Whether Will is Absolute or Conditional," 1 A.L.R.3d 1048, 1050 (1965). The controlling question as to whether a given will is conditional or absolute is per force resolved by seeking the testator's probable intent. 79 Am.Jur.2d, Wills § 745 (1975). This is basic doctrine in our jurisdiction, applicable to any contested will. In Engle v. Siegel, 74 N.J. 287, 290 (1977) the court, following Fidelity Union Trust Co. v. Robert, 36 N.J. 561 (1962), stated, with respect to the quest for the testator's probable intent, that:
a court not only examines `the entire will' but also studies `competent extrinsic evidence'; it attributes to the testator `common human impulses' and seeks to find what he would subjectively have desired had he in fact actually addressed the contingency which has arisen. We are no longer limited simply to searching out the probable meaning intended by the words and phrases in the will. Relevant circumstances, including the testator's own expressions of intent, Wilson v. Flowers, 58 N.J. 250, 262-63 (1971), must also be studied, and their significance assayed. Within prescribed limits, guided primarily by the terms of the will, but also giving due weight to the other factors mentioned above, a court should strive to construe a testamentary instrument to achieve the result most consonant with the testator's `probable intent.' [74 N.J. at 291. (emphasis in original)].
Engle's instruction that a reviewing court should attribute common human impulses to the testator is consistent with the *542 common sense approach used by courts of other jurisdictions. It has been noted that:
The question that most frequently arises in connection with conditional wills is whether the terms of the will were clearly intended by the testator to amount to a condition or whether they constitute merely a poorly worded statement of the motive or inducement for making a will at that particular time. Undoubtedly some testators do expressly relate the impending circumstances that prompted them to make the will, and where it is a home drawn instrument the wording is often such that it is difficult to tell whether the testator was doing nothing more than relating the inducement or providing that the will should take effect only in the event the impeding circumstances should come to pass. If the statement is one of inducement only, the occurrence or nonoccurrence of the anticipated event is immaterial, and the instrument will be probated in any event, if otherwise valid. [1 Page, Wills, § 9.1 (Bowe-Parker ed. 1960)]
Stated differently, it has been explained that:
As a general rule, if the conditional language is construed merely as a statement of the motive or inducement for making the will, it will be held absolute, but if such language expresses an intention on the part of the testator actually to condition its validity upon the happening or nonhappening of an event or contingency, it will be held conditional. [Annotation, supra at 1050.]
Courts will generally regard a will "as absolute rather than conditional unless the language employed by the testator unequivocally shows his intention to make the entire will conditional." Page, supra, § 9.5; see also 79 Am.Jur.2d, supra, § 745; Annotation, supra, at 1050. The apparent justification for the judicial preference for absolute rather than conditional wills rests with a desire to prevent intestacy. 79 Am.Jur.2d, supra, § 745. This is a common sense approach which recognizes that one who takes the pains to make a will clearly does not intend his estate to thereafter pass by intestacy.
Appellant, motivated by the material desire that the estate pass to her by intestacy, maintains that Estelle conditioned her rather specific testamentary dispositions, which had the primary purpose of providing for appellant's welfare during her remaining years, upon death during her trip to Florida. She views Estelle's phrase "[i]n the event that something should happen while I am away" as language "universally" recognized as establishing a condition. Appellant urges that Estelle's expression that she wished "to state forever & eternity" *543 must be regarded as a layperson's attempt at "legalise for the sake of dignifying the document," because it is "otherwise devoid of meaning."
We regard appellant's arguments as too simplistic. The circumstances surrounding the making of this holographic will, including decedent's admittedly fragile state of health, her stipulated intelligence and her background as a registered nurse and a school teacher, reasonably suggest Estelle was concerned that death was more likely to occur while she was away from her normal surroundings and her regularly provided medical attendance and dialysis facilities. Although she apparently had arranged for dialysis treatments in Florida, it would be natural that in her perilous state of health she would worry about the prospect of death in a different environment. She had no will and, considering her health, she was at a troublesome age.
Rosalie Niemtzow, decedent's Florida hostess, filed a certification stating that decedent's "primary concern, should anything happen to her, was that her mother ... should be provided for and that she should remain in the family residence ... for the duration of her life." With travel impending, it was clearly time for her to make the testamentary dispositions and provisions she had theretofore failed to legally express. Her will is the expression of her natural desire to secure her mother's future and to make specific gifts to other loved ones, to cut off a brother with a bequest of only a dollar and to place her house and residual estate, after her mother was cared for, in the hands of her intended residuary beneficiary.
The will is as complete a disposition of her estate as could be expected of an intelligent, but legally untrained, person who is moved finally to draw a will by the prospect of travel and the need to continue medical treatment in unknown hands. These considerations are natural. These were, without doubt, the motivations for her last will and testament. She expressed no thought, however, that these considerations were to limit the *544 efficacy of her will. Instead, she specifically declared that her dispositions were intended "forever & eternity." Realistically viewed, her intent was absolute. Moreover, this intelligent person, having survived the concern of immediate death and having finally reduced her testamentary intent to writing, clearly chose, during some 18 months after her trip, to leave her dispositions as she had declared them.
The order entered June 15, 1984 admitting this will to probate is affirmed.