209 N.J. Super. 356 (1986)
507 A.2d 748
IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL OF ESTHER SMITH, DECEASED.
Superior Court of New Jersey, Appellate Division.
Submitted March 18, 1986.
Decided April 17, 1986.
*357 Before Judges GAULKIN and STERN.
Richardson & O'Connor, attorneys for appellants Roberta Crowley and David Smith (James C. Richardson, on the brief).
Woolson, Guterl, Sutphen & Anderson, attorneys for respondents William Dilly, George Dilly, Grover Bush, Mrs. Harold Eick and Anna B. Stevens (Robert E. Guterl and Elizabeth M. Moser on the brief).
The opinion of the court was delivered by STERN, J.S.C. (temporarily assigned).
This appeal requires us to decide whether a writing signed by decedent Esther Smith should be admitted to probate as a holographic will pursuant to N.J.S.A. 3B:3-3. Under that statute, a will "is valid as a holographic will, whether or not witnessed, if the signature and material provisions are in the handwriting of the testator."
Shortly after her husband's death in March 1984, decedent delivered a document, handwritten and signed by her, to the attorney for her late husband's estate. There is no contention that the writing does not meet the formal requirements of the statute. The writing in its entirety reads as follows:
My entire estate is to be left jointly to my step-daughter Roberta Crowley 178 Tillotson Rd., Fanwood, N.J., and my step-son David J. Smith 112 Hillside Ave. Watchung, N.J.
 s/ Esther L. Smith
 492 Mountainview Dr.
 No. Plainfield, N.J.
 07063
The stepdaughter and stepson are children of decedent's late husband by a previous marriage. Decedent's husband had left his entire estate to her; the attorney to whom she delivered the writing represented the estate. Mrs. Smith died on October 24, 1984. Probate is challenged by decedent's heirs who would take by intestacy.
*358 During the hearing on the complaint for probate, the attorney and stepdaughter testified. The latter indicated the good relationship between decedent and Ms. Crowley, Mr. Smith and their families. The attorney was 84 at the time of the hearing and retired from the practice of law. He stated that decedent "gave me this document and said this is my will, this is how I want my estate to go." She further "told me at that if she's going to make any changes, she would let me know." She never subsequently made any changes nor asked for a draft of a formal will.
At the time decedent delivered the document to the attorney, he asked her who she wanted to serve as executor. Decedent indicated that David Smith should so act, and the attorney made a notation to that effect on the face of the writing. On cross-examination, the attorney stated that decedent told him "Harry, this is my will, this is the way I want my estate to go." The following colloquy then occurred:
Q Now, you're absolutely certain that she used the words "This is my will"?
A I'm definitely sure of that. That's just what she said to me.
* * * * * * * *
That's just what she said: That's my will, this is how I want my estate to go.
The objectors conceded that the writing embodied the decedent's intent as of the date it was delivered to the attorney. While the date of delivery was challenged and is unclear, no evidence was introduced to suggest that decedent's intent changed between the date of delivery and date of death approximately seven months after her husband's passing.
The trial judge concluded that decedent intended the writing as instructions to be used in connection with the drafting of a formal will but that she did not intend the writing to constitute the will itself. The judge concluded, in part, as follows:
Somewhere along the line, J-1 [the challenged writing] came into [the attorney's] possession. I can only conclude, from what I've seen here, that A, it came into his possession quite late. B, when it came into his possession, it was after, well after Mrs. Smith was aware of the formal prerequisites of a will. She'd been to a bank, she knew about a potential problem. She knew you have *359 to go for a lawyer, she knew about waivers, she'd been in the Surrogate's office. She knew all of this and you're talking about an intelligent, meticulous woman who then, inexplicably, makes a will by tearing a piece of paper out of a pad, and that is her will?
Quite frankly, gentlemen, since I'm obligated to sit as a trier of fact, I find that inconceivable. I'm satisfied, by the highest standard of evidence, namely beyond a reasonable doubt, that Esther Smith never intended J-1 to be her will. That was never her intent. I would have to attribute to her little, if any intelligence, in view of her prior experience, in the probate of her husband's estate, that this was intended as a will. I'm satisfied, by any standard of evidence, even placing the burden upon the Defendants to demonstrate beyond a reasonable doubt, that this is not a will, that the proofs in this case, demonstrate to me beyond a reasonable doubt, that Esther Smith never intended J-1 to be a will.
We are satisfied that there was sufficient credible evidence, including an evaluation of demeanor and credibility, to support these findings. Cf. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 484 (1974). We nevertheless conclude that even if decedent intended the attorney to prepare a formal will the writing, which satisfies N.J.S.A. 3B:3-3, should be admitted to probate. We are further satisfied that to do so would implement the decedent's probable intent in the absence of execution of a formal will.
In Matter of the Will of Cohen, 200 N.J. Super. 538 (App. Div. 1985), a letter disposing of property "In the event that something should happen while I am away" was deemed absolute and not conditional, thereby subject to probate. Accord Cowley v. Knapp, 42 N.J.L. 297 (Sup.Ct. 1880) (letter relating to disposition if testatrix and husband died while traveling became operative). Similarly, in In re Estate of Cunningham, 198 N.J. Super. 484 (Law Div. 1984), a will not qualifying for probate under N.J.S.A. 3B:3-2 was admitted to probate as a holographic will because it complied with the requirements of N.J.S.A. 3B:3-3. In these cases it was clear that the decedent intended the writing to constitute his last will and testament. Compare In Matter of Will of Marinus, 201 N.J. Super. 329, 343 (App.Div. 1985).
While the court in Cohen was addressing whether the writing intended as a will was also intended to survive a Florida *360 vacation or was merely conditional, the court noted that the concept of "probable intent" is the "basic doctrine in our jurisdiction, applicable to any contested will." To that end, the court must determine what the decedent "would subjectively have desired had he in fact actually addressed the contingency which has arisen." Id., quoting Engle v. Siegel, 74 N.J. 287, 291 (1977). While Engle dealt with construction of a formal will, we are of the view that the "probable intent" doctrine should apply to ascertain whether a writing which satisfies N.J.S.A. 3B: 3-3 was intended as a holographic will in the absence of execution of a formal will.[1]
As stated in Page on Wills with respect to holographic writings:
The authorization of such informal wills, which are usually home-drawn without the advice of legal counsel, gives rise to a constant flood of litigation. Since to the layman wills of this kind do not seem to require the services of an attorney for their execution, with the result that they can be prepared without expense, and can be used to convey the same kinds of property as formal wills, they have come into widespread use. Often they are embodied in letters and frequently employ such ambiguous language and use such unintelligible phrases that it is difficult and in some instances impossible to tell whether the informal instrument was meant to be just a letter, a letter embodying a will, a deed, a statement as to the contents of a will previously made, a statement that a will would be made in the future, a statement that a deed or other conveyance has been previously made, a statement that a deed would be made in the future, or an instrument of some other type. It is very common place for testators to make holographic wills as part of a letter. If it is clear that the writer meant the letter itself to be dispositive and have testamentary effect, its testamentary parts will be admitted to probate and be given effect. [1 Bowe-Parker: Page on Wills, § 6.21, p. 276 (footnotes omitted).]
However, as the text also points out:
If the contents of the informal instrument are not testamentary in character, the instrument has been denied probate as a valid will. The following writings have been held not testamentary: where it contains advice; instructions not intended to be testamentary in themselves; where it states the kind of will *361 which testator intends to make but is not itself meant to be a will; a letter asking testator's attorney to prepare a modification of a prior will. .. .
* * * * * * * *
Unless it is testamentary, a letter may not be entitled to probate as a will although it contains directions for the handling of the writer's property after his death. [Id. at 280-281. (footnotes omitted).]
See also e.g., In re Estate of Teubert, 298 S.E.2d 456 (Sup.Ct. App., W. Va. 1982); In re Will of Mucci, 287 N.C. 26, 213 S.E.2d 207 (Sup.Ct. 1975); In re Kuttler's Estate, 160 Cal. App.2d 332, 325 P.2d 624 (Dist.Ct.App. 1958); 79 Am.Jur. Wills § 702, pp. 781-782.
The real issue, then, is the author's probable intent. Cf. Matter of Will of Cohen, supra, 200 N.J. Super. at 541. We are satisfied that even if decedent intended that the attorney draft a formal will for execution, she would have also intended that her property pass in accordance with her recorded wishes if she died before execution of a formal will. Compare In re Estate of Teubert, supra, 298 S.E.2d at 459, 460-462 (noting that "the law favors testacy over intestacy" and that extrinsic evidence "is admissible to prove the testator's intent"); In re Mucci's Will, supra (holographic will must be written with testamentary intent; intent to be decided by factfinder based on writing and surrounding circumstances); In re Kuttler's Estate, supra, 352 P.2d at 627 (testamentary intent must be found; intent can be determined based on extrinsic evidence including conversation with attorney about drafting a formal will.) As stated in Kuttler's Estate:
What Mrs. Kuttler obviously desired was that her donees have the power to distribute her "belongings" if she should die before executing a new and formal will. To say that she wanted something less is to deny the obvious. Of course, the fact that she expected to make a later and more formal will would not detract from the testamentary character of the one in question. Richberg v. Robbins, 33 Tenn. App. 66, 228 S.W.2d 1019, 1022 [1950]; Henderson v. Henderson, 183 Va. 663, 33 S.E.2d 181, 183 [1945]; 1 Page on Wills (Lifetime Ed.) § 50, p. 112; 94 C.J.S. Wills 129, p. 905. [325 P.2d at 631]
Accordingly, the judgment under review is reversed and the matter is remanded to the Law Division, Probate Part, with instructions to admit the holographic will to probate.
NOTES
[1] N.J.S.A. 3B:3-3 is modeled on Section 2-503 of the Uniform Probate Act. The official comment thereto is set out in Clapp, Wills and Administration, § 41 (N.J. Practice Series, p. 174.)