IN THE MATTER OF THE PROBATE OF THE ALLEGED WILL
OF ESTHER SMITH, DECEASED.

Argued November 3, 1986—Decided April 29, 1987.

*Mark S. Anderson* argued the cause for appellants, William Dilly, George Dilly, Grover Bush, Mrs. Harold Eick, and Anna B. Stevens (*Woolson, Guterl, Sutphen & Anderson,* attorneys).

*James C. Richardson* argued the cause for respondents, Roberta Crowley and David J. Smith (*Richardson & O'Connor* attorneys).

The opinion of the Court was delivered by

POLLOCK, J.

Underlying this appeal is the factual question whether the decedent intended a holographic writing to be her last will and testament. The Law Division ruled that she did not so intend and that the writing should not be admitted to probate. Although the Appellate Division sustained the finding that the decedent did not intend the writing to be her will, that court ordered the admission of the writing to probate because "to do so would implement the decedent's probable intent in the absence of execution of a formal will." *Will of Smith,* 209 *N.J.Super.* 356, 359 (App.Div.1986). We granted certification, 104 *N.J.* 461 (1986), and now reverse. We conclude that a holographic writing prepared without testamentary intent may not be admitted to probate merely because it represents the probable intent of the writer.

–I–

Sometime between March 1, 1984, the date of the death of her husband, David Smith, and October 24, 1984, the date of her

own death, Esther Smith delivered to Harry Fass, her attorney, a writing. As introduced into evidence, the writing stated:

My entire estate is to be left *jointly* to my step-daughter
Roberta Crowley
178 Tillotson Rd. Fanwood, N.J.,
and my step-son
David J. Smith
112 Hillside Ave
Watchung, N.J.
Extor—
DAVID ·

s/ Esther L. Smith
492 Mountainview Dr.
No. Plainfield, N.J.
07063

In the interim, she met with the attorney, who was eighty-four years old and about to retire. Testifying in April 1985, the attorney could not recall when Mrs. Smith delivered the writing to him, stating variously it was April, August, September, or late 1984. According to the attorney's testimony, when Mrs. Smith handed him the writing, which was on a 5 x 7 piece of paper torn from a notebook, she said, "this is my will, this is the way I want my estate to go." 209 *N.J.Super.* at 358. He testified further that she also said "she would let me know" if she wanted to make any changes. *Id.*

The attorney, however, did not treat the writing as a will. His standard practice had been to place each will in a separately labeled envelope, which he would keep in a fireproof safe. In this instance, he simply stapled the piece of paper to the file for the Estate of David Smith. Although he normally did not write on ˅ clients' wills—and would not tolerate any typographical errors in them—he added the phrase "Extor-David," indicating that Mrs. Smith's stepson, David, was to be the executor. In a letter dated August 29, 1984, and mailed September 26, 1984, the attorney wrote to the decedent advising her that he was "retiring from the practice of Law on or about October 1, 1984. * * * Your file and/or Last Will and Testament in my office is

at your disposal if you do not care to retain [the attorney to whom he was transferring his practice]."

From the sparse record before us, we know little of the family life of Esther Smith, except that she was David Smith's second wife. She was not survived by her husband or parents, and she apparently never had any brothers, sisters, or children. The dispute here is between Mrs. Smith's first cousins and her stepchildren, the son and daughter of David Smith. In addition to the attorney, the only other witness at trial was Roberta Crowley, the stepdaughter, who described Mrs. Smith as an intelligent person who understood the nature of a will.

The trial court concluded that as the testatrix and sole beneficiary of her husband's will, Mrs. Smith learned "some of the formal prerequisites involved in that will and in the probate of a will * * *." Consistent with that conclusion, the trial court observed that Mrs. Smith carefully noted in her daily diary that in March and April 1984 "Harry," her attorney, took her to the Surrogate's Office in Somerville "to take care of the will," and "to the bank to inventory the safe deposit box." On another date, she noted that "Harry" called to tell her she could "sell the sports car." She noted on September 27, 1984, "letter from Harry—he is retiring October 1. I called him—he will take care of my affairs." Notwithstanding these and other entries pertaining to the details of her daily life, the diary contains no reference to her alleged will. The trial court found Mrs. Smith to be "a businesslike, meticulous person * * * far too intelligent and businesslike and meticulous a person ever to have intended that Miss Crowley and Mr. Smith would have to probate this will, this document, J–1, as a will."

The court determined that Mrs. Smith intended the challenged writing to be used as the basis for the preparation of a will, and not as a will itself. In particular, the court found:

Somewhere along the line, J–1 [the challenged writing] came into [the attorney's] possession. I can only conclude, from what I've seen here, that A, it came into his possession quite late. B, when it came into his possession, it was after, well after Mrs. Smith was aware of the formal prerequisites of a will.

She'd been to a bank, she knew about a potential problem. She knew you have to go for a lawyer, she knew about waivers, she'd been in the Surrogate's office. She knew all of this and you're talking about an intelligent, meticulous woman who then, inexplicably, makes a will by tearing a piece of paper out of a pad, and that is her will?.

Quite frankly, gentlemen, since I'm obligated to sit as a trier of fact, I find that inconceivable. I'm satisfied, by the highest standard of evidence, namely beyond a reasonable doubt, that Esther Smith never intended J-1 to be her will. That was never her intent. I would have to attribute to her little, if any, intelligence, in view of her prior experience, in the probate of her husband's estate, that this was intended as a will. I'm satisfied, by any standard of evidence, even placing the burden upon the Defendants to demonstrate beyond a reasonable doubt, that this is not a will, that the proofs in this case, demonstrate to me beyond a reasonable doubt, that Esther Smith never intended J-1 to be a will. [209 *N.J.Super.* at 358–59.]

The Appellate Division determined that the trial court's factual findings were supported by "sufficient, credible evidence." *Id.* at 359. We agree. *Rova Farms Resort v. Investors Ins. Co.*, 65 *N.J.* 474, 484 (1974). Thus, we determine as a matter of fact that the decedent did not intend the challenged writing to be her last will and testament. We part company with the Appellate Division, however, in its conclusion that "even if decedent intended the attorney to prepare a formal will the writing, which satisfies *N.J.S.A.* 3B:3–3, should be admitted to probate. We are further satisfied that to do so would implement the decedent's probable intent in the absence of execution of a formal will." 209 *N.J.Super.* at 359.

We reach our conclusion notwithstanding the concession of the objectors that the document complies with the formal requirements for a holographic will, *N.J.S.A.* 3B:3–2, and that it represents the decedent's intentions for the disposition of her estate. The narrow question is whether, in the absence of testamentary intent, a writing that would otherwise be a valid holographic will may be admitted to probate as the written expression of the writer's probable intent.

–II–

Except for holographic wills, it is essential that a will be executed in compliance with statutory requirements for formal execution. In this regard, *N.J.S.A.* 3B:3–2 provides:

> Except as provided in N.J.S. 3B:3–3, every will shall be in writing, signed by the testator or in his name by some other person in his presence and at his direction, and shall be signed by at least two persons each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will.

Although the statute does not allude to it, testamentary intent has always been a prerequisite to admission of an instrument to probate. A. Clapp, 5 *New Jersey Practice, Wills & Administration* § 41 (1982); *see also In re Sapery's Estate*, 28 *N.J.* 599, 607 (1959) (testamentary intent is "the essence of an effective testamentary act"); *Combs v. Jolly*, 3 *N.J.Eq.* 625, 627–28 (Prerog.Ct.1835) (testator must so intend for an instrument to operate as a will).

A formally executed will ordinarily declares in its body that it is the testator's last will, a declaration that is generally acknowledged by the attesting witnesses in the attestation clause. Moreover, under the Wills Act, an acknowledgment by the testator and the execution of an affidavit by the attesting witnesses make a will self-proving. *N.J.S.A.* 3B:3–4 to –6. Thus, the testamentary character of the instrument is manifest on the face of a formal will.

██ Concerning holographic wills, the Act provides:

> A will which does not comply with N.J.S. 3B:3–2 is valid as a holographic will, whether or not witnessed, if the signature and material provisions are in the handwriting of the testator. [*N.J.S.A.* 3B:3–3.]

Although the Wills Act recognizes holographic wills as valid, whether witnessed or not, nothing suggests that the Legislature intended to eliminate testamentary intent either for a holographic or for a more formally executed will. To the contrary, the Wills Act contemplates that testamentary intent is a requirement of both forms of wills. *N.J.S.A.* 3B:3–3 specifically calls for a will, not a mere writing. Furthermore, the definition section, *N.J.S.A.* 3B:1–2, defines a will as "the last will and testament of a testator or testatrix and includes any codicil." No instrument, including one that is handwritten, is a will unless the signer so intends.

The issue of the identity of the party bearing the burden of proof to establish a holographic writing as a will and the nature of that burden was considered, but not decided, by the Law Division. The court concluded that it was convinced beyond a reasonable doubt, which it perceived to be the highest possible standard, that Mrs. Smith never intended the document in question to be her will. We acknowledge that the record supports the trial court's evaluation of the evidence, but believe it will be helpful, should the issue arise again, to state the appropriate burden and identify the party who bears it.

With respect to a formally executed will, a presumption of execution with testamentary intent arises from the face of the document. *In re Pagel's Estate*, 52 *Cal.App.*2d 38, 125 *P.* 2d 853 (Dist.Ct.App.1942) (presumption of testamentary intent if deducible from the writing itself). In this case, however, we are confronted with a handwritten or holographic instrument that does not manifest testamentary intent within its four corners. In such a case, the burden of producing evidence of testamentary intent remains on the proponent. *See, e.g., In re Petkos*, 54 *N.J.Super.* 118, 121 (App.Div.1959) ("[t]he lack of a perfect attestation clause places the burden of proof on the proponent of the will to establish by positive proof all of the statutory requisites, including publication"); *In re Van Handlyn's Will*, 83 *N.J.Eq.* 290 (Prerog.Ct.1914) (where testamentary intent not apparent from face of document, proponent bears burden of proof); *see also In re Estate of Abbott*, 1 *N.J.Super.* 298 (App.Div.1949) (probate denied to holograph without attestation clause because proponent failed to establish execution with testamentary intent).

The Wills Act does not lead to a contrary conclusion. In adopting the Uniform Probate Code, the New Jersey Legislature did not include section 3-407, captioned "Formal Testacy Proceedings; Burdens in Contested Cases." Section 3-407, which sets forth the burden of proof on various issues, states that "[c]ontestants of a will have the burden of establishing

lack of testamentary intent * * *." Neither section 3–407 nor the commentary indicates specifically whether the proponent or contestant of a holographic will should bear the burden of establishing testamentary intent. Certain provisions of section 3–407, such as those placing on the proponent the burden of establishing prima facie proof of due execution, are more aptly tuned to a formal, rather than a holographic, will. Other provisions, such as those pertaining to proof of undue influence, would be as applicable to a holographic, as to a formal, will. One possible explanation for the omission of section 3–407 from the Wills Act is that procedural matters, such as allocation of burdens of proof, are normally reserved for the courts. In the absence of any legislative history to the contrary, we conclude that the Legislature's failure to include section 3–407 does not reflect any legislative intention to remove from the proponent of a holographic will the burden of establishing testamentary intent.

■ Our conclusion is consistent with the general rule in other states that a presumption of testamentary intent does not arise from a holographic will and that the burden remains on the proponent to establish that the writing was prepared with testamentary intent. *In re Estate of Wolfe*, 260 *Cal.App.*2d 587, 67 *Cal.Rptr.* 297 (1968) (burden of proving testamentary intent is on proponent); *Brandt v. Schucha*, 250 *Iowa* 679, 96 *N.W.*2d 179 (1959) (if document does not purport to be will on its face, burden on devisee to show testamentary intent); *In re Estate of Nelson*, 250 *N.W.*2d 286 (S.D.1977). *But see In re Grobman*, 635 *P.*2d 231 (Colo.Ct.App.1981) (interpreting statute modelled after section 3–407 as applying to holographic will, and placing burden on contestant to prove lack of testamentary intent). We are persuaded by these decisions that the proponent of a holographic instrument should bear the burden of establishing that the writing was prepared with testamentary intent. We are further persuaded that the standard of proof should be that normally applicable in civil actions, a preponderance of the evidence. *See, e.g., In re Estate of Wojan*, 126

*Mich.App.* 50, 337 *N.W.*2d 308 (1983) (proponents bear same burden as in any civil action); *see also In re Estate of Camin,* 212 *Neb.* 490, 323 *N.W.*2d 827 (1982) (burden on proponent to prove by preponderance lawful execution and testamentary capacity).

■ Our difference with the Appellate Division arises from its recourse to the doctrine of probable intent to validate the will. That position had not been advanced by the objectors until the pronouncement of the Appellate Division, which raised the point for the first time in its opinion. Contrary to the conclusion of the Appellate Division, the doctrine of probable intent is available only to interpret, but not to validate, a will. *See, e.g., Engle v. Siegel,* 74 *N.J.* 287 (1977) (court may look at entire will, extrinsic evidence, and common human impulse to ascertain and carry out testator's probable intent); *Fidelity Union Trust v. Robert,* 36 *N.J.* 561 (1962) (judicial function in construing wills is to determine probable intent of testator); *cf. In re Will of Cohen,* 200 *N.J.Super.* 538 (App.Div.1985) (using doctrine of probable intent to determine whether will was conditional or absolute). Probable intent comes into play only after a will is found to be valid. As an aid to construction of an otherwise valid will, the doctrine assures that the decedent's estate will be distributed in accordance with his or her wishes. A. Clapp, 5 *New Jersey Practice, Wills & Administration* § 196 (1982).

■ In the present case, the issue is not whether the writing probably expresses Mrs. Smith's intention concerning the disposition of her estate if it were testamentary in character, but whether she intended that writing to be her will. It may be that Mrs. Smith meant what she wrote when she indicated that her estate should devolve to her stepchildren. Nonetheless, we are constrained to conclude that the proponents have failed to establish that Mrs. Smith intended the writing to be her will.

The judgment of the Appellate Division is reversed, and the matter is remanded to the Law Division for the entry of an order directing that the writing not be admitted to probate.

*For reversal and remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.