703 A.2d 988

IN THE MATTER OF THE DECLARATION OF
TRUST BY ROSE CATANIO, DECEASED.

Superior Court of New Jersey
Appellate Division

Argued October 22, 1997—Decided December 29, 1997.

440

Before Judges SHEBELL, A.A. RODRIGUEZ and COBURN.

*Joel A. Davies* argued the cause for appellant Pauline DeMaio (*Robert H. Taff*, attorney; *Mr. Davies*, on the brief).

*John Schuster, III* argued the cause for respondents Thomas Catania, Nicholas Catania, Rose Avella and George LaCorte.

The opinion of the court was delivered by

COBURN, J.A.D.

Rose Catanio intended that upon her death her home would become the property of her sister Pauline DeMaio. To achieve that result, she signed a document entitled "Declaration of Trust" which provided for the transfer. She died shortly thereafter. We are called upon to decide the legal effect of that writing [1] and its

---

[1] The complaint filed by DeMaio asked for judgment authorizing the recording of the Declaration of Trust in the County Clerk's office pursuant to *N.J.S.A.* 46:16–1 to –14. Plaintiff assumed that once recorded, the document would

relation to Rose's earlier executed will. The parties to this dispute are plaintiff Pauline DeMaio and defendants Thomas Catania, Nicholas Catania, Rose Avella, and George LaCorte, who, like Pauline, are beneficiaries under the will.

The Declaration of Trust was testamentary in nature and was executed in accordance with the formalities required by *N.J.S.A.* 3B:3–2 of the statute of wills. The issue to be resolved is whether Pauline, the proponent of the document, met her burden of proving by a preponderance of the evidence that the document was executed with testamentary intent. *See In re Will of Smith,* 108 *N.J.* 257, 262–65, 528 *A.2d* 918 (1987). We are entirely satisfied that she did, and that in so doing, she further demonstrated that the Declaration of Trust was intended to be a codicil to the earlier will.

The facts are not in dispute. In July 1986, Rose Catanio and her husband, Ralph, purchased a home at 191 Liberta Drive, Toms River, for $82,500. Later that year they executed mutual wills. Each left their entire estate to the other, and each provided for the same gifts to the same alternate beneficiaries. Ralph died on June 26, 1995, at age 83, and Rose, then age 81, became the sole owner of the home by operation of law.

Rose and Ralph were a couple of modest circumstances. He had been a clothes presser for a manufacturing company, and Rose had only been educated through grammar school. Rose was

---

effect a transfer of the real estate. Actually the document's own terms do not support that construction; it merely attempts to empower the successor trustee to transfer the property by deed. The trial court denied the relief requested on the ground that Catanio had failed to deliver the document before she died. Since that view is not dispositive of the case, we will not comment upon it. Furthermore, *N.J.S.A.* 46:16–1 is not the relevant point of departure for analysis of this case. The relevant legal issues were neither discussed below nor initially argued here. However, the parties have accepted our offer to file supplemental briefs. *See Ford v. Reichert,* 23 *N.J.* 429, 435, 129 *A.2d* 439 (1957)("If and when the Appellate Division concludes substantial justice requires the invoking of the plain error rule and the issues have not been presented or argued, the litigants are entitled to notice of the points the court thinks constitute plain error and have a right to be heard before a final determination.").

able to read and write and was mentally competent in 1995. They had no children. According to Pauline, Rose had said she intended to stay in her home but had also "expressed her desire and intention to leave her home to me after her death."

On June 30, 1995, Rose called her friends William and Teresa Lyle and asked them to come over to her house that afternoon. Rose had known the Lyles, who lived nearby, for about nine years. When the Lyles arrived around 2:00 p.m., the house was in good order and Rose was clean, well-dressed, and coherent. After they sat down in the kitchen, Rose said, "I have something here that I'd like you to witness my signing." Rose then signed the document in the presence of the Lyles without identifying its nature. The Lyles immediately signed the document as witnesses. They did not read the contents of the document. However, in court they testified, based on their signatures, that the Declaration of Trust in question was the document they had witnessed for Rose.

On July 13, 1995, Rose was taken to the emergency room of a nearby hospital. In the early evening, Pauline came to visit. Rose told her there was a document which she had placed in an envelope near her black pocketbook, and she wanted Pauline to "look at it." Later that evening, Rose died.

About three days later, Pauline and others went to Rose's house and found the Declaration of Trust and Rose's will together on top of the black pocketbook. They were in a manilla envelope in which Rose customarily kept important papers.

The Declaration of Trust[2] describes the house in detail by reference to the prior deed, a filed map, the lot and block on the tax map, and its common address, and includes the following pertinent provisions:

NOW, THEREFORE, KNOW ALL MEN BY THESE PRESENTS, that I do hereby acknowledge and declare that I hold and will hold said real property and all

---

[2] The underlined portions of the document were typewritten; the balance of the document appears to be a commercially available printed form.

right, title and interest in and to said property and all furniture, fixtures and real and personal property situated therein, IN TRUST

1. For the use and benefit of Pauline T. DeMaio (sister) * * *. Upon my death, unless the beneficiary shall predecease me ... my Successor Trustee [later named in the document as Pauline] is hereby directed forthwith to transfer said property and all right, title and interest in and to said property unto the beneficiary absolutely and thereby terminate this trust.

\* \* \* \* \* \* \* \*

2. I reserve unto myself the power and right (1) to place a mortgage or other lien upon the property, (2) to collect any rental or other income which may accrue from the trust property and, in my sole discretion as trustee, either to accumulate such income as an addition to the trust assets being held hereunder or pay such income to myself as an individual.

3. I reserve unto myself the power and right at any time during my lifetime to amend or revoke in whole or in part the trust hereby created without the necessity of obtaining the consent of the beneficiary and without giving notice to the beneficiary. The sale or other disposition by me of the whole or any part of the property held hereunder shall constitute as to such whole or part a revocation of this trust.

4. The death during my lifetime ... of the beneficiary designated hereunder shall revoke such designation, and in the former event, I reserve the right to designate a new beneficiary. Should I for any reason fail to designate such new beneficiary, this trust shall terminate upon my death and the trust property shall revert to my estate.

\* \* \* \* \* \* \* \*

6. This Declaration of Trust shall extend to and be binding upon the heirs, executors, administrators and assigns of the undersigned and upon the Successors to the Trustee.

\* \* \* \* \* \* \* \*

8. This Declaration of Trust shall be construed and enforced in accordance with the laws of the State of New Jersey.

IN WITNESS WHEREOF, I have hereunto set my hand and seal this thirtieth (30) day of June 1995.

(sign here) s/ Rose Catanio L.S.

Witness: (1) s/ William Lyle Witness: (2) s/ Teresa Lyle.

▪▪▪ A trust is "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." *Restatement (Second) of Trusts* § 2 (1959).

The effectiveness of the trust does not depend upon the settlor making delivery to anyone of the trust document or the subject of the trust when the settlor declares that he or she will hold the property in trust. 5 *New Jersey Practice, Wills and Administration* § 7, at 38–40 (Alfred C. Clapp)(3d ed.1982). However, when real estate is involved, the trust must be in writing. *N.J.S.A.* 25:1–10 to –11. If the beneficiary does not acquire any interest in the property before the settlor dies, the transaction is clearly testamentary and invalid unless there is compliance with the statute of wills. Clapp, *supra*, § 7, at 32; I *Scott on Trusts* § 56 (3d ed.1967).

■ Under Rose's Declaration of Trust, no interest passed to Pauline until Rose's death. Therefore, the instrument is clearly testamentary in nature, and its validity depends upon whether the proofs demonstrate that it was executed in accordance with the formal requirements of the statute of wills, *N.J.S.A.* 3B:3–1 to –49, and with the requisite testamentary intent. The relevant section of the statute is *N.J.S.A.* 3B:3–2, which provides the following:

Except as provided in *N.J.S.* 3B:3–3 [relating to holographic wills], every will shall be in writing, signed by the testator or in his name by some other person in his presence and at his direction, and shall be signed by at least two persons each of whom witnessed either the signing or the testator's acknowledgment of the signature or of the will.

In this case the instrument was in writing and was signed by the settlor and by two persons (the Lyles) who witnessed the settlor sign. Thus, the formalities of the statute were satisfied. *See In re Estate of Peters*, 107 *N.J.* 263, 272–75, 526 *A.2d* 1005 (1987).

■ The only other requirement is the presence of testamentary intent. In *Smith*, the Court explained the principles of law in these terms:

Although the statute does not allude to it, testamentary intent has always been a prerequisite to admission of an instrument to probate. A. Clapp, 5 *New Jersey Practice, Wills & Administration* § 41 (1982); *see also In re Sapery's Estate*, 28 *N.J.* 599, 607, 147 *A.2d* 777 (1959) (testamentary intent is "the essence of an effective testamentary act"); *Combs v. Jolly*, 3 *N.J. Eq.* 625, 627–28 (Prerog.Ct.1835) (testator must so intend for an instrument to operate as a will).

A formally executed will ordinarily declares in its body that it is the testator's last will, a declaration that is generally acknowledged by the attesting witnesses in the attestation clause. Moreover, under the Wills Act, an acknowledgment by the testator and the execution of an affidavit by the attesting witnesses make a will self-proving. *N.J.S.A.* 3B:3-4 to -6. Thus, the testamentary character of the instrument is manifest on the face of a formal will.

Concerning holographic wills, the Act provides:

A will which does not comply with *N.J.S.* 3B:3-2 is valid as a holographic will, whether or not witnessed, if the signature and material provisions are in the handwriting of the testator.

[*N.J.S.A.* 3B:3-3.]

Although the Wills Act recognizes holographic wills as valid, whether witnessed or not, nothing suggests that the Legislature intended to eliminate testamentary intent either for a holographic or for a more formally executed will. To the contrary, the Wills Act contemplates that testamentary intent is a requirement of both forms of wills. *N.J.S.A.* 3B:3-3 specifically calls for a will, not a mere writing. Furthermore, the definition section, *N.J.S.A.* 3B:1-2, defines a will as "the last will and testament of a testator or testatrix and includes any codicil." No instrument, including one that is handwritten, is a will unless the signer so intends.

[108 *N.J.* at 262, 528 *A.*2d 918 (citations omitted).]

The Court in *Smith* then went on to make the following point:

With respect to a formally executed will, a presumption of execution with testamentary intent arises from the face of the document. In this case, however, we are confronted with a handwritten or holographic instrument that does not manifest testamentary intent within its four corners. In such a case, the burden of producing evidence of testamentary intent [and the burden of persuasion] remains on the proponent.

[*Id.* at 263, 528 *A.*2d 918.]

The Court also held that "the standard of proof should be that normally applicable in civil actions, a preponderance of the evidence." *Id.* at 264, 528 *A.*2d 918 (citations omitted).

In *Smith,* the Court was considering a holographic instrument which indicated the desired disposition of the writer's estate but failed to use the word "will" or even refer to the writer's death. The writer gave the instrument to her attorney who did not treat it as a will. *Id.* at 259, 528 *A.*2d 918. The Court held that the proponent of the instrument had failed to show testamentary intent.

The facts in the instant case contrast sharply with those of *Smith.* Here, we are dealing with an instrument which was executed in full accord with the formalities of the statute of wills

and which by its own terms provides that it will become effective upon the settlor's death. Furthermore, it declares that it shall be binding upon the heirs and executor of the settlor. Our construction of the document as evidencing testamentary intent is buttressed by a number of facts. Rose told Pauline that the house would become hers when Rose died. During her last brief hospitalization, she told Pauline that there was a document in her house which she wanted DeMaio to see. That document, the Declaration of Trust, was kept by Rose in the same envelope, where she kept all her important papers, including her will.

We recognize that Rose's will has already been submitted to probate. However, we conclude that the undisputed facts show by a preponderance of the evidence that Rose intended the Declaration of Trust to be a codicil to that will. The defendants' suggestion that the mutuality of the Catanio wills prohibited modification or revocation by Rose Catanio is inconsistent with our holding in *In re Estate of Cosman*, 193 *N.J.Super.* 664, 475 *A.2d* 659 (App.Div.1984).

Therefore, the judgment is reversed and the case is remanded to permit amendment of the complaint and entry of judgment thereon admitting the Declaration of Trust to probate as a codicil to the will of Rose Catanio.

Reversed and remanded.