IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 17, 2003 Session

# IN RE: ESTATE OF GLORIA ELEANOR FRANKLIN, EDWARD MANNING ADMINISTRATOR WITH THE WILL ANNEXED, v. W. JESS WALTMAN

Direct Appeal from the Chancery Court for Cocke County
No. P-3490      Hon. Telford E. Forgety, Jr., Judge

FILED NOVEMBER 20, 2003

No. E2003-00926-COA-R3-CV

The Trial Court following an evidentiary hearing, held decedent's holographic will to be conditional and inoperative. On appeal, we reverse.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded.**

HERSCHEL PICKENS FRANKS, J. delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Mark A. Cowan, Morristown, Tennessee, for Appellant.

Roy T. Campbell, Jr., Newport, Tennessee, for Appellee.

## OPINION

Gloria Eleanor Franklin died on May 16, 1999. A will executed by her in 1975 was admitted to probate on December 15, 1999, designating Edward Manning as Administrator, with the will annexed. On January 18, 2000, a petition was filed to probate a later will, which was signed on July 7, 1993 with two attesting witnesses who were her sisters. The will had been recently found by the petitioner and his wife. In rejecting the latter will, the Trial Court said "The question of whether or not the document proffered for probate was in the handwriting of the decedent and found among her papers met the formal requirements for a holographic will or a witnessed will was not an issue in this hearing, and the case was heard on the legal issue of whether or not the document was a conditional document and not subject to probate." The Court then found that the document in

question "was a conditional document which by its terms was to take effect only upon the happening of a certain contingency, and that the contingency did not occur."

The Court's Judgment was appealed and this Court in remanding the issue for trial, said:

> Our survey of the decisions of other jurisdictions leads us to conclude that whether the decedent in the instant case intended her will to be operative *only* if she died on her way to or from New Jersey should not be ascertained based solely upon the use of what is arguably contingent language in the will.[1] In our judgment, other relevant factors should also be considered: (1) the circumstances surrounding the execution of the document; (2) any statements made by the decedent following the execution of the document; (3) the manner in which the document was kept after the time for the purported contingency had lapsed; (4) the decedent's education and knowledge of the law; (5) whether any subsequent testamentary documents were made; (6) whether the contingency bears a reasonable relation to the disposition of the decedent's property; (7) whether a finding of a conditional will means that the decedent died intestate; (8) whether effectuating the terms of the will would be equitable under the circumstances; and (9) such other relevant factors as bear on the issue at hand.

The proponents of the will offered several witnesses who testified that the deceased had said repeatedly that she wanted Jess and Terry Waltman to have her property. The estate offered no proof.

The Court observed the decedent wrote the will and signed it in the presence of her sisters and that she did so because she had heard about an automobile accident. The Court then considered the factors set out in this Court's Opinion and found that the circumstances surrounding the making of the will was that decedent was about to take a road trip and heard about a bad accident. The Court found that decedent's husband predeceased her and they had no children. The Court further found that the Waltmans did a lot for the decedent.

The Court found that the decedent made statements to many people regarding the fact

---

[1]The handwritten document states:

> I Gloria Franklin leaves [sic] everything to Terry & Jess Waltman.
>
> I Gloria Franklin leaves [sic] everything I own including farm, vehickles [sic] everything to Jess & Terry Waltman in case I die on my way to & from Jersey.

The document was signed by Gloria Franklin and Jessie M. Hall and Gertrude E. Hall, and dated July 7, 1993.

that she wanted the Waltmans to have all of her property because they had done so much for her and because she wanted the property kept in the family. The Court found the 1975 will of decedent and her husband was kept in a safe and that the will in question was given to Terry in a sealed envelope and kept by her until after decedent died. The Court thought it was notable that the safe contained other important documents and the deceased could have asked for the holographic will and placed it in the safe as well.

The Court found that decedent had no special education or knowledge of the law, and that there were no later wills made, but found it significant that decedent had taken steps toward making another will. The Court concluded the distribution set forth in the holographic will would not be inequitable considering the circumstances, but that the 1975 will's distribution was not inequitable either. The Court found the contingency in the will bore no relation to the disposition.

The Court ruled that the petitioner failed to carry the burden of proof on the factors enumerated by this Court, and said the most important factor to consider was that decedent intended to make another will, and she probably would not have considered doing so if she thought the holographic will was valid.

The issue on appeal is whether the holographic will is conditional?

The proof is undisputed that decedent was motivated by the news of an automobile accident to make a will. It is also undisputed, however, that decedent told others that she wanted the same disposition of property whether she died on the trip or at any other time.

It is undisputed that decedent told several people before and after the trip to New Jersey that she wanted her property to go to the Waltmans and never changed her mind about that disposition.

Decedent gave the document to Terry in a sealed envelope and never asked for it back. The Trial Court was concerned about this, speculating that if the decedent wanted this document to control she could have asked for it back some time in the ensuing six years and placed it in her safe where the 1975 wills were found. There is no suggestion that the decedent thought the document would not be kept safely by her niece.

The Trial Court correctly found decedent had no special education and knowledge of the law, and this factor is significant because it demonstrates the decedent would have no reason to think that the language she used about the trip to New Jersey might somehow affect the validity of the will. The Trial Court correctly found that no subsequent testimony or documents were made, although the Court thought it was significant that the decedent apparently met with an attorney and talked about making a formal will. The Trial Court observed that if the decedent had intended the holographic will to control, or thought it was still valid, decedent would not have sought to make another will. However, the undisputed proof was the decedent wanted the Waltmans to have her property no matter what, not just if she died on a trip to New Jersey.

The Trial Court correctly found that the finding of a conditional will would not leave the decedent intestate, as the older will controlled, and that the terms of the holographic will would be equitable under the circumstances, as the Waltmans had done so much for the decedent.

Taking into account the evidence as to the factors in their entirety, we conclude the Trial Court erred in ruling the will was conditional. The Trial Court, in making his ruling said:

And as the Court has said . . . it is a close case. The biggest thing in the Court's mind is the fact without question this lady indicated an intent to make a later formal Will, even took steps toward doing it. The point of that being, that if she intended that earlier Holograph to be a permanent Will, and if she intended the same disposition later then why go through the steps of making a later formal Will.

We conclude that the Trial Court's finding as to what motivated decedent to consider making a new will is not supported by the evidence. There is no proof that decedent wanted a different disposition than if the decedent did not survive the trip to New Jersey. In fact, the proof clearly established that she continued to tell everyone up until her death six years later that this was the disposition she intended. There is no evidence to infer that had she made a new will, the disposition of her estate would have been any different from her holographic will. The factor to be considered is whether any subsequent testamentary documents were made by deceased, and there are none.

In sum, taking into account and evaluating the factors set forth in our prior Opinion, we conclude that the holographic will should be admitted to probate and executed.

Based upon the guiding principles from other jurisdictions and the proof in the record, the holographic will reflects the decedent's intent, and the trip mentioned therein was simply an inducement to its making and not a condition precedent to its operation. *See Black v. Taylor*, 259 P.2d 1014, 1018 (Cal. Dist. Ct. App. 1953); *McMerriman v. Shiel*, 140 N.E. 600 (Ohio 1923); *In re Will of Cohen*, 491 A.2d 1292 (N.J. Sup. Ct. App. Div. 1985); *Mason v. Mason*, 268 S.E.2d 67 (W. Va. 1980); and *Longshore v. Desmond*, 35 Cal. Rptr. 737 (Cal. Dist. Ct. App. 1963). We reverse the Judgment of the Trial Court and remand, with the direction that the will be admitted to probate as the decedent's will.

The cost of the appeal is assessed to the estate.

_____
HERSCHEL PICKENS FRANKS, J.